GARDEBRING, COMMISSIONER OF THE MINNE-
SOTA DEPARTMENT OF HUMAN SERVICES
*v.* JENKINS

No. 86-978.   Argued January 13, 1988—Decided April 19, 1988

STEVENS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, BLACKMUN, and SCALIA, JJ., joined. O'CONNOR, J., filed an opinion concurring in the judgment in part and dissenting in part, in which BRENNAN, J., joined, and in which MARSHALL, J., joined as to the last paragraph, *post*, p. 432. KENNEDY, J., took no part in the consideration or decision of the case.

*John L. Kirwin*, Assistant Attorney General of Minnesota, argued the cause for petitioner. With him on the briefs were *Hubert H. Humphrey III*, Attorney General, and *Beverly Jones Heydinger*, Assistant Attorney General.

*Paul J. Larkin, Jr.*, argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Fried, Assistant Attorney General Willard, Deputy Solicitor General Wallace*, and *John F. Cordes*.

*Laurie N. Davison* argued the cause for respondent. With her on the brief was *Alan B. Morrison*.*

---

*A brief of *amici curiae* urging reversal was filed for the State of Alabama et al. by *Warren Price III*, Attorney General of Hawaii, *Thomas D. Farrell*, Deputy Attorney General, *Don Siegelman*, Attorney General of Alabama, *Steve Clark*, Attorney General of Arkansas, *Duane Woodard*, Attorney General of Colorado, *Joseph I. Lieberman*, Attorney General of Connecticut, *John S. Miller, Michael J. Bowers*, Attorney General of Georgia, *James T. Jones*, Attorney General of Idaho, *Neil F. Hartigan*, Attorney General of Illinois, *Thomas J. Miller*, Attorney General of Iowa, *Robert T. Stephan*, Attorney General of Kansas, *David L. Armstrong*, Attorney General of Kentucky, *William J. Guste, Jr.*, Attorney General of Louisiana, *James E. Tierney*, Attorney General of Maine, *J. Joseph Cur-*

JUSTICE STEVENS delivered the opinion of the Court.

In 1981 Congress amended the statute authorizing the Aid to Families with Dependent Children (AFDC) program to provide that a family receiving nonrecurring lump-sum income is ineligible for benefits for the number of months that the income would satisfy the family's standard of need. §2304 of the Omnibus Budget Reconciliation Act of 1981, 95 Stat. 845, as amended,[1] 42 U. S. C. §602(a)(17) (1982 ed. and Supp. III); see generally *Lukhard* v. *Reed*, 481 U. S. 368, 371–373 (1987) (plurality opinion); see also *id.*, at 384–386 (Powell, J., dissenting).[2] In this case the United

_____

*ran, Jr.*, Attorney General of Maryland, *Frank J. Kelley*, Attorney General of Michigan, *Brian McKay*, Attorney General of Nevada, *Lacy H. Thornburg*, Attorney General of North Carolina, *Nicholas Spaeth*, Attorney General of North Dakota, *Anthony J. Celebrezze, Jr.*, Attorney General of Ohio, *Dave Frohnmayer*, Attorney General of Oregon, *T. Travis Medlock*, Attorney General of South Carolina, *Roger A. Tellinghuisen*, Attorney General of South Dakota, *David L. Wilkinson*, Attorney General of Utah, *Jeffrey Amestoy*, Attorney General of Vermont, *Mary Sue Terry*, Attorney General of Virginia, *Donald J. Hanaway*, Attorney General of Wisconsin, and *Joseph B. Meyer*, Attorney General of Wyoming.

*Evelyn R. Frank* filed a brief for the Economic Rights Task Force, National Lawyers Guild, as *amicus curiae* urging affirmance.

[1] The statute was amended again in §2632 of the Deficit Reduction Act of 1984, 98 Stat. 1141, to give States the option of recalculating the period of ineligibility caused by receipt of a lump sum in three situations not relevant here.

[2] Examples of "lump-sum income" are provided in the federal regulation that implements Congress' directive:

"When the AFDC assistance unit's income, after applying applicable disregards, exceeds the State need standard for the family because of receipt of nonrecurring earned or unearned lump sum income (including for AFDC, title II and other retroactive monthly benefits, and payments in the nature of a windfall, e. g., inheritances or lottery winnings, personal injury and worker compensation awards, to the extent it is not earmarked and used for the purpose for which it is paid, i. e., monies for back medical bills resulting from accidents or injury, funeral and burial costs, replacement or repair of resources, etc.), the family will be ineligible for aid for the full number of months derived by dividing the sum of the lump sum income and

States Court of Appeals for the Eighth Circuit held that the Minnesota Department of Human Services (the Department) could not enforce that amendment against respondent, and the class she represents, because it had not given them the notice required by a regulation promulgated by the Secretary of Health and Human Services (the Secretary), 45 CFR § 206.10(a)(2)(i) (1987). We granted certiorari to review the Court of Appeals' interpretation of the Secretary's regulation as well as its remedial decision in favor of an injunction barring the Department from recouping payments made to respondent during her period of ineligibility. Because we conclude that the regulation was not violated, we do not reach the remedy question.

## I

On October 31, 1983, respondent's husband received a retroactive Social Security disability payment of $5,752. Respondent used the entire lump sum to pay a $3,863.75 arrearage on the family's home mortgage, an overdue car repair bill of $1,366, and a legal fee of $150, and the remainder to purchase clothing for her children and to pay other bills. Within two days, the entire sum had been expended.[3]

On November 2, 1983, respondent reported the receipt (and the expenditure) of the Social Security payment to her caseworker and was advised that under the 1981 amendment her family would be ineligible for benefits for the next several months.[4] She immediately filed an administrative appeal

---

other income by the monthly need standard for a family of that size. . . ." 45 CFR § 233.20(a)(3)(ii)(F) (1987).

[3] Under the lump-sum rule that had been in effect prior to 1981, the family had an incentive to spend the entire amount in October to avoid having any unspent amount treated as a "resource" in future months because excessive resources, like excessive income, would make the family ineligible for AFDC benefits. See *Lukhard* v. *Reed*, 481 U. S. 368, 371–373 (1987) (plurality opinion).

[4] As the Appeals Referee later stated in his findings of fact (which were adopted on appeal by the Deputy Commissioner, see App. 73):

"The need standard for the [Jenkins] family unit is $724 per month. Because of recoupment of a past overpayment, it did not actually receive that

and her family continued to receive benefits while the appeal was pending. See 45 CFR § 205.10(a)(6)(i) (1987). The Appeals Referee decided that the benefits should not be terminated because the Jenkinses had not received any advance notice of the new lump-sum rule, App. 69–73, but the Department's Deputy Commissioner reversed. *Id.*, at 73–76. While expressing disagreement with the policy implemented by the 1981 amendment, he concluded that the federal statute must be enforced even though the lack of advance notice had produced a "harsh result."[5]

When the administrative review proceedings terminated in August, the Jenkins family was again eligible for benefits. The Department's decision, however, meant that benefits had been improperly paid for the period between October 1983 and May 1984. Accordingly, as required by the federal statute, see 42 U. S. C. § 602(a)(22) (1982 ed. and Supp. III); see also 45 CFR § 233.20(a)(13) (1987), in due course the De-

---

amount each month. It received $688 each month. The County Agency considered that through its error, overpayments were made in the amount of $724 monthly for the months of October and November, 1983. It determined that eligibility would not exist through the month of March, 1984, and that if eligibility existed for April, 1984, it would not be for a full grant." *Id.*, at 71.

[5] He stated, in part:

"While the County Agency should have advised the Petitioner of the lump sum rule and how any Worker's Compensation or Disability payments would be treated, the question does arise regarding whether the recipients could have acted any differently if they *had* known.

"The Federal policy regarding the treatment of lump sum payments is punitive and ignores the basic purposes of the AFDC Program. We do not like the Order in this case and would do anything to avoid the harsh result. The State Agency must comply with Federal Regulations as those regulations have been interpreted by legal counsel. Neither our legal counsel nor State Agency staff believes this is a good policy, but we have verified our interpretation with the Federal Agency on numerous occasions. The effect of the Federal policy is to deprive children of the minimum support available in an already insufficient AFDC grant. It does not please us to affirm the termination of the Petitioner's grant, but we see no alternative within current Federal policy." *Id.*, at 75 (emphasis in original).

partment ordered recoupment of the wrongfully paid benefits by deducting 1% from each future AFDC monthly payment, in accordance with state law, see Minn. Stat. § 256.73, subd. 6 (1986).

Shortly after the conclusion of the state administrative proceedings, respondent intervened in an action already pending in Federal District Court challenging the Department's lump-sum policy on various grounds.[6]   In her complaint in intervention, App. 14, 20, respondent added an allegation that the Department's implementation of the new lump-sum rule without adequate notice to AFDC applicants and recipients violated the Secretary's regulation.   The District Court cer-

---

[6] The original plaintiffs contended that the policy (1) violates the Social Security Act because it fails to take into account the actual availability of lump-sum funds in determining AFDC eligibility, (2) violates the Act because it is improperly applied to those members of the class who cannot, despite good-faith efforts, make their lump sums last for the entire period of ineligibility, (3) creates an irrational, irrebuttable presumption that the lump-sum payment would be available for use by the family during the entire period of ineligibility, (4) violates due process because it applies without advance notice, (5) results in the "punishment" of needy children for their parents' improvidence, and (6) violates equal protection principles by treating an AFDC recipient more harshly than a family that received, and spent, a lump sum immediately before applying for an AFDC grant.   See Complaint, 1 Record A–12—A–15.   The District Court rejected each of these arguments, except (4), which it did not reach due to its holding that advance notice was required by the Secretary's regulation.   *Slaughter* v. *Levine*, 598 F. Supp. 1035, 1045–1049, 1052–1055 (Minn. 1984).   The Department had also filed a third-party complaint against the Secretary, claiming that 42 U. S. C. § 602(a)(17) (1982 ed. and Supp. III) does not apply to unavailable lump sums, and that HHS' lump-sum regulations are invalid to the extent that they require States to consider unavailable lump sums; these claims were rejected.   598 F. Supp., at 1045–1049.   The Department also asked for, and was granted, a District Court order that the Secretary pay the federal share of any benefits paid to class members as a result of the court's decision.   *Slaughter* v. *Levine*, 605 F. Supp. 1242, 1249–1250 (Minn. 1985).   The Secretary filed an appeal from this order, but subsequently withdrew it.   See *Slaughter* v. *Levine*, 801 F. 2d 288, 294, n. 8 (CA8 1986) (case below).

tified a class[7] and entered summary judgment in its favor on the notice issue. *Slaughter* v. *Levine,* 598 F. Supp. 1035, 1049–1052 (Minn. 1984).

The District Court awarded two forms of relief. First, it required the Department to prepare a written notice that adequately explained the lump-sum policy and to distribute it to all current AFDC recipients and all future applicants. *Id.,* at 1055. Second, it ordered the Department to notify all class members who had been injured by the Department's violation that they might apply for corrective payments from their local welfare agencies. *Ibid.* The court concluded that the Eleventh Amendment prevented it from ordering any repayment of benefits that had been improperly denied, *ibid.,* or from enjoining the Department from recouping overpayments to families like the Jenkinses. *Slaughter* v. *Levine,* 621 F. Supp. 509, 513–514 (Minn. 1985). For the purposes of relief, the District Court determined that members of the class who did not expend any portion of their lump-sum payments before they received notice of the current lump-sum policy had not been injured by the Department's violation of the federal notice regulation. 598 F. Supp., at 1055.[8]

---

[7] It defined the class as follows:

"[T]hose individuals in the State of Minnesota who are otherwise eligible for AFDC benefits and who have been, or will be, found ineligible for AFDC benefits for a predetermined number of months as a consequence of receipt of lump sum income by one of the members of an AFDC assistance unit of which they have been a member, and whose lump sum has or will become unavailable to them in whole or in part prior to their re-eligibility for benefits." 598 F. Supp., at 1041.

[8] Because the remaining named plaintiff from the initial complaint had not spent any of her lump-sum funds prior to receipt of notice of the Department's policy, plaintiffs' counsel conceded that she was not an adequate representative of the class. For that reason, although respondent was an intervenor, she became the class representative. See 605 F. Supp., at 1245–1247, and n. 3.

A divided panel of the Court of Appeals affirmed the District Court's judgment insofar as it found a violation of the notice regulation and denied monetary relief to members of the class. *Slaughter* v. *Levine*, 801 F. 2d 288 (CA8 1986) (case below). It concluded, however, that the District Court should have enjoined the Department from recouping any amounts that were treated as "overpayments" under the post-1981 policy if they would have been proper under the pre-1981 lump-sum rule. In explaining its basic holding, the Court of Appeals pointed out that advance notice to lump-sum recipients was necessary to achieve the purposes of the 1981 amendment,[9] and that to impose the new rule on a family that assumed that the old rule was still in effect "would be truly Kafkaesque."[10] The dissenting judge did not believe

---

[9] "[A] lump-sum recipient without notice of the new rule is very likely to spend most or all of a lump sum before learning of the rule's strict budgeting requirements, particularly when the recipient is familiar with the prior policy. Consequently, the net result of failing to give adequate advance notice of the new lump-sum rule is to frustrate the very goal Congress sought to further in enacting the rule: encouraging recipients to budget lump sums so that they serve to replace the family's monthly AFDC check." 801 F. 2d, at 295–296 (footnote omitted).

[10] "The importance of advance notice is heightened by the fact that the effects of the lump-sum rule on an AFDC recipient can be peculiarly drastic. In general, the AFDC program's income-and-asset-related eligibility requirements reduce or cut off eligibility only if the resource is actually available to the recipient. However, the new lump-sum rule diverges from the norm, cutting off eligibility without regard, except in very limited circumstances, to whether the lump sum is actually available. Thus, under the operation of most eligibility requirements, there is no point at which a family will not have either the basic support provided by the AFDC program or other financial resources that equal or surpass the AFDC standard of need. In contrast, under the lump-sum rule, where a family exhausts its lump sum before its ineligibility period expires, the family may well be left for months with insufficient resources to provide for basic necessities. To impose this situation on a family that had no advance notice of the new lump-sum rule and operated on the altogether reasonable assumption that the old policy still governed would be truly Kafkaesque." *Id.*, at 296 (footnotes omitted).

that either the statute or the notice regulation conditioned the implementation of the new rule on advance notice to the small percentage of AFDC beneficiaries affected by it. He construed the regulation as simply requiring "the state to publicize generally in written form, and orally as appropriate, the AFDC program and its availability." *Id.*, at 303 (Fagg, J., dissenting). Because of the significance of the Court of Appeals' holding for States' administration of welfare laws, we granted certiorari, 482 U. S. 926 (1987).

## II

The Secretary's notice regulation, which was first adopted in 1971 and later amended in 1978 and 1979, now provides:

> "Applicants shall be informed about the eligibility requirements and their rights and obligations under the program. Under this requirement individuals are given information in written form, and orally as appropriate, about coverage, conditions of eligibility, scope of the program, and related services available, and the rights and responsibilities of applicants for and recipients of assistance. Specifically developed bulletins or pamphlets explaining the rules regarding eligibility and appeals in simple, understandable terms are publicized and available in quantity." 45 CFR § 206.10(a)(2)(i) (1987).

Pursuant to this regulation, the Department has prepared and distributed two brief printed brochures. The first contains four pages and generally describes the AFDC program, the application process, the benefit levels, and the applicant's basic procedural rights. The pamphlet states that the "information in this brochure will help you decide if you wish to apply for AFDC, but it is not intended to cover all program rules. . . . You are urged to contact your welfare office for specific information as to the eligibility rules and limitations for AFDC. Since these can and do change from time to

time, you should inquire with your welfare office for up-to-date information." App. 29.

The second brochure is a six-page booklet entitled "Monthly Reporting: What AFDC Households Must Know"; it explains the recipient's duty to report all of the household income each month. Although some of the intricacies of the AFDC program are explained, it does not comment specifically on the lump-sum rule. In addition to using pamphlets such as these, the Department relies on its caseworkers to provide applicants and recipients with oral advice about the aspects of the program that are relevant to specific situations.

When the 1981 amendment was enacted, the Department did not prepare a new pamphlet. It did, however, on September 18, 1981, send a letter to all AFDC recipients advising them that there had been 19 major changes in the AFDC program. The paragraph commenting on the new lump-sum rule was not a model of clarity,[11] but presumably it at least alerted the reader to the existence of the new rule. Since the letter was just mailed to those already receiving AFDC benefits, however, it did not provide any notice to a family that did not apply for benefits until a later date. Such a family might not learn about the operation of the lump-sum rule until it reported the receipt of a payment to a caseworker; if, as was true in the Jenkins' case, the money had already been

---

[11] The first change described in the letter was the new lump-sum rule. The letter stated:

*"Lump Sum Money:* When a family receives lump-sum money such as an inheritance, a Social Security back payment, insurance settlement, gift, etc., the money will be deducted from the AFDC grant, whether or not it has already been spent. If the lump sum added to other family income totals more than the AFDC maximum for that size family, the family will be ineligible for the month in which the lump sum was received (and possibly for a number of following months), whether or not the money is spent before the period of ineligibility has gone by. If the family already received an AFDC grant that month, the grant would be 'recouped' by the welfare agency." App. to Pet. for Cert. 97–98.

spent, it would obviously be too late for the family to budget the use of that money to replace its normal AFDC checks.

The question for us to decide is not whether advance written notice is desirable, or, indeed, whether such notice is necessary to accomplish the purposes of the 1981 statute. The question is whether the pre-existing regulation was intended to forestall the implementation of a congressionally mandated program change until the state agencies provided all AFDC recipients with notice of the change. Although such a rule might well represent sound policy, we do not believe that a fair reading of the text of § 206.10(a)(2)(i) conveys that message.

It is true that the regulation requires that individuals be given "information in written form, and orally as appropriate, about . . . conditions of eligibility," but that is hardly how one would write a command stating that every such condition must be identified and explained before it may be enforced. The reference to "information" in both written and oral form "about" various aspects of the program seems to require instead merely a general descriptive statement regarding AFDC benefits. Thus, the plain language of the regulation does not require that information be disseminated regarding every specific change in eligibility requirements.

Indeed, it is doubtful whether the notice requirement even applies to AFDC *recipients*.[12] The notice provision appears

---

[12] Respondent objects that the Department did not raise this contention below. Although it did not elaborate on the point, the Department did, though, comment that "[b]asically, [the regulation] is *directed toward new applicants*, requiring that the state publicize the availability of the AFDC program through the use of pamphlets." Brief for Appellant in No. 85–5143–MN (CA8), p. 24 (emphasis added). Moreover, the Department raised the argument in the petition for a writ of certiorari, see Pet. for Cert. 11, and respondent did not object, in her brief in opposition, that the Department had not raised the claim below. Thus, in accordance with our rule that "[n]onjurisdictional defects of this sort should be brought to our attention *no later* than in respondent's brief in opposition to the petition for certiorari," *Oklahoma City* v. *Tuttle*, 471 U. S. 808, 816 (1985) (emphasis in original), "we consider it within our discretion to deem the defect

in a section that contains various rules regarding "[a]pplication, determination of eligibility and furnishing of assistance," 45 CFR § 206.10 (1987). The section speaks to how one may apply for benefits, general conditions of eligibility, the time frame within which States must determine eligibility, basic rules about the furnishing of assistance to recipients, and general procedures for redetermining eligibility due to changed circumstances. The regulation in question in this case, § 206.10(a)(2)(i), both on its face and in context of the section as a whole, quite plainly speaks to how general information about the program must be provided to individuals seeking assistance, that is, to program applicants. See § 206.10(b)(1) (defining "applicant"). The very next provision in the section, in fact, states that "[p]rocedures shall be adopted which are designed to assure that *recipients* make timely and accurate reports of any change in circumstances which may affect their eligibility or the amount of assistance." § 206.10(a)(2)(ii) (emphasis added). In other words, the drafters of this regulation wrote separately about two types of information that must be communicated: in § 206.10 (a)(2)(i) about providing applicants with program information, and in § 206.10(a)(2)(ii) about developing procedures for recipients themselves to provide information about changed circumstances that might affect their benefits. The requirement of § 206.10(a)(2)(i) that information be given to applicants in "written form, and orally as appropriate," seems in fact to require no mailing of information at all, but rather simply explains that printed information about access to AFDC benefits, such as pamphlets, booklets, and flyers, be

waived." *Ibid.* Finally, the issue in this case, as raised by respondent's complaint, is the meaning of the notice provision of the federal regulations. Whether or not the provision covers recipients as well as applicants is germane to that interpretive quest, regardless of whether one of the parties points us in that direction.

available, and that such information may be transmitted orally as well.[13]

Respondent contends that the notice provision applies to recipients of AFDC benefits as well as applicants. She points to § 206.10(a)(1)(iii), which provides that "[a]n applicant may be assisted, if he so desires, by an individual(s) of his choice (who need not be a lawyer) in the various aspects of the application process and the redetermination of eligibility and may be accompanied by such individual(s) in contacts with the agency and when so accompanied may also be represented by them." Since "redetermination of eligibility" involves "a review of factors affecting AFDC eligibility and payment amount," § 206.10(b)(4), and thus clearly applies to recipients, respondent contends that "applicant" is used in § 206.10(a)(1)(iii) to include recipients as well, and therefore must have the same inclusive meaning throughout § 206.10, including the notice provision.

---

[13] Petitioner also points out that although the notice provision originally referred simply to "applicants," see 36 Fed. Reg. 3860, 3864 (1971), in 1978 it underwent a temporary metamorphosis. The Secretary published a notice of proposed rulemaking, 41 Fed. Reg. 56832 (1976), to respond to "reports from recipient group representatives that some State and local agencies have not made printed or oral information about the public assistance programs available to persons seeking information unless they are applicants." 43 Fed. Reg. 6949 (1978). Accordingly, the notice provision was "revised to specify that information concerning the program shall be provided to any person who requests it, and applicants and all persons who inquire about the programs shall be informed of the eligibility requirements and the rights and obligations of individuals under the programs." Id., at 6950. The next year, without explanation, the notice provision was shifted back to its original, and current, form. See 44 Fed. Reg. 17940, 17943 (1979). We agree with petitioner that this history provides strong support for the conclusion that the current provision does not extend beyond applicants. It also tends to buttress our reasoning in the text that the notice provision was intended simply as a requirement that general program information be made available to applicants upon request, and not as a mandate to States to provide specific, unrequested information about particular changes in eligibility requirements to current benefits recipients, or, as we also discuss in the text, to applicants.

We are unpersuaded. The term "recipients" is used in various other provisions in the section, and appears simply to have been inadvertently omitted at this juncture. The definition of the term "applicant," understood in the context of eligibility "redetermination," makes this omission apparent. An "applicant" is "a person who has, directly, or through his authorized representative, or where incompetent or incapacitated, through someone acting responsibly for him, made application for public assistance from the agency administering the program, and whose application has not been terminated." § 206.10(b)(1). Since redetermination of benefits affects only those who have already been "determined to be eligible," § 206.10(a)(9), and an "applicant," by definition, has not yet been determined to be eligible, it would therefore be impossible for an applicant's case to be redetermined. Thus, it is plain that § 206.10(a)(1)(iii) omitted the word "recipient" when referring to redetermination.[14]

Thus, a reading of the plain language of the notice provision and other provisions in the same section reveals that

---

[14] The Secretary's comments accompanying the regulations as originally promulgated strongly support this conclusion. As originally proposed in 1970, the redetermination provision read "[a]n applicant *or recipient* may be assisted if he so desires by other individuals of his choice in the various aspects of the application process and the redetermination of eligibility . . . ." 35 Fed. Reg. 18402 (1970) (emphasis added). When the provision was adopted several months later, the reference to "recipients" was eliminated, even though the reference to "redetermination of eligibility" was retained. 36 Fed. Reg. 3860, 3864 (1971). The Secretary's explanatory comments continued to acknowledge the distinction between applicants and recipients, but did not explain the deletion of the term "recipients" from the text of the rule itself: "[N]otice of proposed rule making was published . . . to provide that applicants for and recipients of public assistance may be accompanied by other individuals in their contacts with the agency, if they so wish." *Id.*, at 3860. Thus, the history of these regulations supports the conclusion in the text that the word "recipient" was inadvertently omitted when referring to redetermination, and, accordingly, that "applicant," as used in the notice provision, means simply "applicant," and nothing more.

only applicants, and not recipients, are addressed by the requirement that individuals be given information about the program. Further, even as to applicants, the notice provision requires only that general program information be available, in "written form" and "orally as appropriate."[15]

The Secretary, who is responsible for enforcing the regulation, does not agree with the strict interpretation adopted by the District Court. Rather, he believes that it is generally appropriate to rely on an oral explanation of the consequences of receiving a lump-sum payment when the recipient reports it to the family's caseworker.[16] We recognize that

---

[15] The lump-sum rule is only one of many conditions of eligibility for AFDC benefits that are meticulously described in 40 pages of the Code of Federal Regulations and in 66 pages of Minnesota's recently revised AFDC rules and regulations. See 45 CFR pt. 233 (1987); Minn. Rules, ch. 9500.2000 *et seq.* (1987). The conditions are subject to frequent alteration, with many changes such as the new lump-sum rule affecting only a small minority of AFDC recipients. Unquestionably it would be wise (assuming that it were feasible and not too expensive) to precede every such change with adequate advance notice, but the regulation itself does not unambiguously impose any such requirement on state welfare agencies.

[16] In rebutting the argument that the Secretary's views are due deference from us, respondent points to the Secretary's response to an interrogatory put to him by petitioner's predecessor as third-party plaintiff, a response upon which the Court of Appeals relied:

"Federal regulations at 45 CFR § 206.10(a)(2)(i) and (ii) require a State agency to inform AFDC applicants and recipients about eligibility requirements and their rights and obligations under the AFDC Program. Under these requirements, States are fully expected to establish policies to ensure that individuals are provided information in written form, and orally as appropriate, about coverage, conditions of eligibility, scope of the program and related services available. *This would include generally advising applicants and recipients of their obligation to report receipt of lump sum income, the operation of the lump sum rule, and the effect on eligibility for assistance.*" App. 89 (emphasis added).

While the highlighted sentence indeed indicates that individuals must be advised to report receipt of lump-sum income, it does not specify whether such advisement must be made in specific mailings—*i. e.*, a letter to recipients telling them to report receipt of lump-sum income as soon as it is re-

the Secretary had not taken a position on this question until this litigation. However, when it is the Secretary's regulation that we are construing, and when there is no claim in this Court that the regulation violates any constitutional or statutory mandate, we are properly hesitant to substitute an alternative reading for the Secretary's unless that alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.

Finally, respondent's emphasis on the harsh result in this particular case [17] is actually, in large part, a criticism of the

---

ceived and before the normal monthly reporting, if necessary—or whether such advisement could be satisfied through the general notice telling individuals to report all of their income, including lump-sum income, on a usual, monthly basis. In fact, in response to a separate interrogatory, the Secretary explained:

"A State has considerable latitude in the development of procedures it shall adopt to ensure effective administration of the AFDC program. *Provisions at 45 CFR § 206.10(a)(2)(i) do not require a State to publicize the lump sum rule or any other eligibility requirements in specifically developed pamphlets or bulletins.*" *Id.*, at 90–91 (emphasis added).

This second answer tends to support our reading of the first answer, namely, that it is inconclusive on the question whether States must notify individuals in advance to report lump-sum income immediately upon its receipt, or, for that matter, whether States must notify individuals in advance about the effect of the new lump-sum rule.

[17] Respondent deems this case particularly harsh because of an earlier incident involving her family. When the Department sent its September 1981 letter explaining the new lump-sum rule, the Jenkinses were receiving AFDC benefits, and received a lump-sum payment later that year. However, because of obligations incurred in other litigation, the Department had not yet implemented the new lump-sum rule, and respondent's lump-sum payment was treated under the old rule. Accordingly, respondent contends, she had every reason to believe that the old lump-sum rule was still in effect when her husband received the October 1983 Social Security payment. However, respondent fails to note during this argument that she swore to an affidavit that stated: "The welfare department apparently says that I got a letter in September of 1981 explaining the new lump sum rule. I have been shown a copy of the letter, and don't remember

lump-sum rule itself. The record indicates that even if respondent had known about the rule, she would have been hard pressed not to use most of the $5,752 payment to avoid a foreclosure of the mortgage on the family home and to make promised payments to other creditors. Further, even though the rule, combined with the absence of advance notice, may have produced a "Kafkaesque" result for the Jenkins family, it is not irrational to assume that most needy families will realize that the receipt of a large lump sum may affect their future eligibility for benefits, and that it would be prudent to inform their caseworkers of the development before spending the money. Moreover, the harshness of the result is somewhat mitigated by the fact that the family's benefits continued during the administrative appeal and that the recoupment process only subtracts 1% of each monthly AFDC check, and the further fact that if AFDC benefits are actually terminated, a family may be immediately eligible for another form of public assistance, albeit a less generous one. In all

---

receiving it." *Id.*, at 111. Respondent cannot have it both ways: Either she received the letter and can argue that, because the new lump-sum rule was not applied to her late 1981 lump-sum payment, she had good cause to believe the new rule was not going to go into effect; or, she did not receive the letter and cannot invoke this equitable argument. Respondent's affidavit admission forecloses the former argument.

The latter argument—that respondent did not receive the 1981 letter (or that she received it but did not understand it) and that therefore she acted in 1983 under the general assumption that, absent notice of the new lump-sum rule, the old lump-sum rule was still in effect—carried some weight with both the District Court and the Court of Appeals. See *Slaughter* v. *Levine*, 598 F. Supp., at 1050–1051; *Slaughter* v. *Levine*, 801 F. 2d, at 295–296. We are sympathetic with the plight of those AFDC recipients in this situation, and can only reiterate that our decision today is an endorsement of neither the new lump-sum rule nor the absence of notice thereof. Instead, our authority is merely to determine whether the pertinent provision of the regulations requires advance written notice to individuals explaining the workings of the new lump-sum rule. As we have explained, 45 CFR § 206.10(a)(2)(i) (1987) simply does not provide the specific mandate that respondent seeks.

events, since the regulation was written long before the lump-sum rule was enacted, it clearly was not designed to forestall the harsh consequences suffered by the Jenkinses.

In the final analysis, our decision rests on our agreement with the Secretary and the dissenting judge in the Court of Appeals that the regulation simply requires the State to publish a general description of the basic structure of the AFDC program and its availability. We would require a much more precise mandate to the States to permit courts to interfere with the workings of governmental benefits programs by ordering the taking of certain affirmative steps.[18]

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KENNEDY took no part in the consideration or decision of this case.

JUSTICE O'CONNOR, with whom JUSTICE BRENNAN joins, and with whom JUSTICE MARSHALL joins as to the last paragraph, concurring in the judgment in part and dissenting in part.

The Court's approach to this case is summarized in its statement that "when it is the Secretary's regulation that we are construing, and when there is no claim in this Court that the regulation violates any constitutional or statutory mandate, we are properly hesitant to substitute an alternative reading for the Secretary's unless that alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Ante*, at 430. I agree with this proposition, but I disagree with the Court's application of it here. In the course of this litigation, the Secretary took what I be-

---

[18] Our decision, of course, means that the Department may recoup the overpayment made to respondent.

lieve are two inconsistent positions. Because I regard the Secretary's later position as far less reasonable than his earlier position, I would hold him to his earlier and better interpretation.

In November 1982, respondent Kathryn Jenkins applied for AFDC benefits. Mrs. Jenkins' husband is disabled, they have five minor children, and the family was found eligible for benefits. In October 1983, Mr. Jenkins received a retroactive Social Security disability payment. The family immediately used the bulk of this lump-sum payment to pay their overdue bills. Under the provisions of a federal statute adopted in 1981, using the lump-sum payment in this way rendered the family ineligible for any AFDC benefits during the next several months. Mrs. Jenkins promptly reported receipt of the lump sum, and its expenditure, to her caseworker. The caseworker informed her of the ineligibility rule, and a written notice followed the next day. Mrs. Jenkins took an administrative appeal of the decision to suspend her benefits, and monthly payments continued while the appeal was pending. The Minnesota Department of Human Services (the Department) ultimately upheld the ineligibility determination and ordered recoupment of payments the Jenkins family had received during the appeal process.

The federal regulation at issue in this case provides that applicants for AFDC benefits "shall be informed about the eligibility requirements and their rights and obligations under the program." 45 CFR § 206.10(a)(2)(i) (1987). The regulation goes on to specify that applicants are to be given information, "in written form, and orally as appropriate," about certain aspects of the program, including "the rights and responsibilities of applicants for and recipients of assistance." *Ibid.* A natural reading of this language suggests that applicants should be provided with information sufficient to enable them to exercise their rights and fulfill their responsibilities under the program. Thus, at the very least, the regulation suggests that applicants should be given enough written in-

formation to warn them of the circumstances under which they should seek further oral explanations of the program's operation and requirements. A reasonable person would be unlikely to suspect that a lump-sum payment should not be used to pay off the family's outstanding debts. For that reason, the Department's failure to notify applicants for AFDC benefits of the new rule was sure to affect some persons in a manner that the Court of Appeals called "truly Kafkaesque." *Slaughter* v. *Levine*, 801 F. 2d 288, 296 (CA8 1986) (opinion below).

The Secretary contends that the notice regulation at issue does not require any warning about the effects of the lump-sum rule until after an AFDC recipient reports receipt of a lump sum to the appropriate state agency. By that time, as the incident with the Jenkins family suggests, it may well be too late for warnings to be of any use. As the Court emphasizes, however, the language of the regulation is so general that one could hardly conclude that the Secretary's interpretation is strictly incompatible with that language. Thus, if all we had before us was the regulation itself and the Secretary's interpretation of it, I might have to agree that we should defer to the Secretary's construction of his own regulation. In answer to an interrogatory filed in this very case, however, the Secretary took a different position than the one he now maintains:

> "Federal regulations at 45 CFR § 206.10(a)(2)(i) and (ii) require a State agency to inform AFDC applicants and recipients about eligibility requirements and their rights and obligations under the AFDC Program. Under these requirements, States are fully expected to establish policies to ensure that individuals are provided information in written form, and orally as appropriate, about coverage, conditions of eligibility, scope of the program and related services available. *This would include generally advising applicants and recipients of their obligation to report receipt of lump sum income, the operation*

*of the lump sum rule, and the effect on eligibility for assistance.*" App. 89 (emphasis added).*

Unlike the majority, see *ante,* at 429–430, n. 16, I cannot reconcile the highlighted sentence with the Secretary's current position. I read that sentence to imply that individuals who may be affected by the lump-sum rule should be given enough information, in advance, to warn them against using lump-sum income in the normal way, viz., to pay one's outstanding debts. That is a far more reasonable position than the one the Secretary later adopted, and I would hold him to his earlier and better interpretation. Cf. *Bowen* v. *American Hospital Assn.,* 476 U. S. 610, 646, n. 34 (1986) (plurality opinion): "The fact that the agency's interpretation 'has been neither consistent nor longstanding . . . substantially diminishes the deference to be given to [the agency's] present interpretation of the statute.' *Southeastern Community College* v. *Davis,* 442 U. S. [397,] 412, n. 11 [1979] (citing *General Electric Co.* v. *Gilbert,* 429 U. S. 125, 143 (1976))." Accordingly, I would affirm the Court of Appeals to the extent that it found a violation of the federal notice regulation.

The relief granted in this case, however, was too broad. The District Court ordered the Department "to forthwith

---

*The regulation at 45 CFR § 206.10(a)(2)(i) (1987) refers only to "applicants," not to "recipients." The regulation at 45 CFR § 206.10(a)(2)(ii) (1987) says: "Procedures shall be adopted which are designed to assure that recipients make timely and accurate reports of any change in circumstances which may affect their eligibility or the amount of assistance." In the answer quoted in the text, the Secretary seems to have read the two provisions to require that applicants be informed about the lump-sum rule, and to require that recipients who were not informed about the rule when they were applicants also be informed. While this is not the only possible interpretation of the regulations, it is not unreasonable: if new applicants need to be informed about the new lump-sum rule, certainly current recipients would have an even greater need to be alerted to the fact that the old rule was being changed. In any event, just before the new lump-sum rule was to take effect, the Department did in fact notify all AFDC recipients about the new rule.

prepare a notice explaining the lump sum policy." *Slaughter v. Levine,* 598 F. Supp. 1035, 1055 (Minn. 1984). Not only was this notice to be provided to all applicants, it was also to be mailed to all current AFDC recipients and provided again to all recipients each six months. *Ibid.* The District Court also specified that the notice "should provide a thorough explanation of the mechanics of the [lump-sum] rule." *Ibid.*

The Secretary has never suggested an interpretation of the notice regulation that would justify such elaborate procedures. First, although I believe that the Secretary did conclude that affected persons should be notified of the lump-sum rule, he never suggested that *repeated* notifications were called for. The Department in fact mailed a letter about the new rule to all then-current AFDC recipients shortly before the rule went into effect. That letter was sufficient notice to the individuals who received it. Furthermore, the Secretary answered an interrogatory in this case with the following statement:

> "A State has considerable latitude in the development of procedures it shall adopt to ensure effective administration of the AFDC program. Provisions at 45 CFR § 206.10(a)(2)(i) do not require a State to publicize the lump sum rule or any other eligibility requirements in specifically developed pamphlets or bulletins." App. 90–91.

Reading this statement in light of the regulation and the other answer quoted above, I conclude that the Secretary interpreted his regulation to require, as to future applicants, only that the Department add a general statement about the new lump-sum rule to its informational materials as soon as reasonably practicable. Because the Department failed to advise applicants about the lump-sum rule for several years after it came into effect, the District Court could also have required the Department to cure that error by informing the affected recipients about the rule. To the extent that the

District Court required the Department to go further, how-
ever, by giving repeated written notice and by distributing
"specifically developed pamphlets or bulletins," that court
unduly infringed the discretion that the regulation was in-
tended to leave in the responsible state agencies.

The District Court was also mistaken in ordering the De-
partment to provide, in writing, a "thorough explanation of
the mechanics" of the lump-sum rule. The Secretary quite
reasonably argues that such a requirement could easily prove
counterproductive because of the complexity of the mechan-
ics involved. Indeed, the detailed explanation given in the
Department's letter of September 1981, quoted *ante*, at 424,
n. 11, which might not be immediately intelligible even to a
trained lawyer, suggests that oral explanations of the rule's
operation would be the best way to provide effective notice.
Had the Department taken reasonable steps to inform all
AFDC applicants of the need to seek an oral explanation at
the appropriate time, the purpose of the regulation would
have been satisfied. In my view, a simple statement like the
following would suffice: "Anytime you receive a lump-sum
payment (such as an inheritance, a Social Security back pay-
ment, an insurance settlement, a gift, etc.) you should inform
your caseworker *before* you spend the money or use it to pay
off your debts."

The Court of Appeals also concluded that the Department
could be enjoined from recouping the payments that were
made to respondent Jenkins during the period that her family
was ineligible under the provisions of the new lump-sum rule.
The court reasoned that, "[b]y failing to comply with the no-
tice regulation, [the Department] failed to institute a legal
change in its eligibility rules." 801 F. 2d, at 301–302. This
conclusion was clearly inconsistent with federal law. In
adopting the new lump-sum rule, Congress provided that it
"shall become effective on October 1, 1981," or that if con-
forming changes in state law were necessary, then it "will be-
come effective" as of the first month after the first state legis-

lative session ending on or after October 1, 1981. Omnibus Budget Reconciliation Act of 1981, Pub. L. 97–35, § 2321, 95 Stat. 859–860. For Minnesota, the result was an effective date of February 1, 1982. See 801 F. 2d, at 303 (dissenting opinion below). Congress gave no indication whatsoever that the effective date for the new lump-sum rule could be delayed by the action or inaction of state agencies. Whether or not Jenkins received notice in accord with the Secretary's regulation, therefore, the lump-sum rule applied to her when her husband received the retroactive disability payment in 1983. The Department was accordingly required by federal law to recoup the overpayments that she received during her appeal of the Department's decision to apply the new lump-sum rule in her case. See 42 U. S. C. § 602(a)(22) (1982 ed., Supp. III); 45 CFR § 233.20 (a)(13)(i) (1987).

In sum, my disagreement with the Court's decision is relatively narrow. I would hold that the federal notice regulation, as interpreted by the Secretary, requires the Department to give applicants for AFDC benefits written notice at least of the existence of the lump-sum rule and of the need for recipients to consult with a social worker before spending any lump sum they might receive. I therefore think that the District Court could properly have ordered the Department to take reasonable steps to include this information in its standard bulletins or pamphlets, and to take reasonable steps to provide the same information to AFDC recipients who were improperly deprived of this information when they applied for benefits. To the extent that the Court of Appeals approved additional relief in this case, I agree that its judgment must be reversed.