Rosalina **RODRIGUEZ**

v.

Annette **PANASIUK,** Servicer; Thomas W. Langston, Director; and U.S. Department of Housing and Urban Development.

Civ. A. No. 93–5051.

United States District Court,
E.D. Pennsylvania.

Jan. 26, 1994.

only for participants, beneficiaries, and fiducia-      ries of the employee benefit plan.

Valerie West, Community Legal Services, Inc., Philadelphia, PA, for plaintiff.

Barbara Koppa Gerolamo, U.S. Attys. Office, James G. Sheehan, Asst. U.S. Atty.–Civ. Div., Philadelphia, PA, for defendants.

### MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Plaintiff Rosalina Rodriguez brought suit challenging a final determination of the United States Department of Housing and Urban Development denying her application for acceptance into the agency's Mortgage Assistance Program (MAP). Presently before the court are the parties' cross motions for summary judgment. For the reasons which follow, both motions will be denied and the cause remanded to the agency for further proceedings.

The following facts, as recited by the defendant, are not disputed.[1]

1. On or about July 16, 1990, plaintiff purchased a house located at 4109 N. 5th Street, Philadelphia, Pennsylvania, with a loan in the amount of $26,676, secured by an FHA insured mortgage and a Note in favor of American Residential Mortgage Corporation. (Administrative Record (A.R.) pp. 1–4). She lives there with her three sons and her boyfriend, Adrian Fields. The family is eligible for food stamps even when both adults are working.

2. The monthly mortgage payment for principal and interest, which is set forth in the terms of the Note, is $254.05 to be paid on the first day of each month beginning September 1990. (A.R. pp. 1–6) Additionally, plaintiff was obligated under paragraph 2 of the mortgage document to pay other monthly charges which pertained, including installments of any taxes, premiums for insurance, and late charges, if applicable.

---

1. In her Memorandum of Law in Support of her Cross–Motion, plaintiff indicates that the statement of facts provided by the defendant is not controverted.

Plaintiff's total monthly payment amounted to $298.75. (A.R. p. 1).

3. The last mortgage payment received by the mortgagee, American Residential Mortgage Corporation, was in November, 1991. (A.R. p. 28).

4. The date of default on the mortgage is January 1, 1992. (A.R. p. 35).

5. By letter dated February 13, 1992, American Residential Mortgage Corporation notified plaintiff that the mortgage was in serious default. Plaintiff had not paid the mortgage payments for the months of December 1991, January 1992 and February 1992. (A.R. p. 12). Plaintiff was advised that she would be given an opportunity to request assistance from HUD if she qualified.

6. A second letter was sent on April 9, 1992 by American Residential Mortgage Corporation advising plaintiff that the mortgagee had determined that plaintiff did not qualify for assistance from HUD. However, the plaintiff was advised that she had the right to contact HUD directly to request assistance. (A.R. pp. 15–16).

7. By letter dated April 24, 1991, HUD acknowledged receipt of plaintiff's request for consideration for mortgage relief and instructed the plaintiff as to the types of documentation and information needed by HUD to make a determination as to whether the plaintiff qualified for the Assignment Program. (A.R. p. 21).

8. By letter dated June 16, 1992, HUD advised the plaintiff that the information provided was insufficient to make a determination as to whether the plaintiff qualified for the Assignment Program. However, plaintiff was advised that she had an opportunity to submit additional documentation, as well as an opportunity to request a face-to-face conference with a HUD representative if she so chose. (A.R. pp. 35–39).

9. Plaintiff requested and was granted a face-to-face conference which was held on July 13, 1992. (A.R. p. 41).

10. Following the conference, plaintiff was given five (5) additional days to submit relevant information, including federal tax returns, copies of paystubs, statements from Mr. Field's employer, E.Z. Park, explaining the reason he was laid off from his job in January 1991 and copies of utility and telephone bills. (A.R. p. 41).

11. According to plaintiff's Federal Income Tax Return, plaintiff's wages for the year 1990 were $12,327. (A.R. p. 42).

12. According to plaintiff's 1991 W–2 form, plaintiff earned $13,037.25 in gross wages for the year. (A.R. p. 45).

13. According to the Request for Verification of Employment completed by plaintiff's employer, the Philadelphia Stock Exchange, plaintiff earned $5,915.00 in regular wages and $346.08 in overtime wages from January 1, 1992 through June 10, 1992—the date the Request form was signed. (A.R. p. 137).

14. There was no significant reduction in plaintiff's wages over the period from September 1991 through July 1992, the period prior to and following the date of default which was January 1, 1992. (A.R. pp. 46–51).

15. Mr. Fields was terminated by his employer, EZ Parks, Inc. because of his involvement with a stolen car. (A.R. pp. 140, 150, 167–168).

16. According to Robert Derr, the General Manager for EZ Parks, Inc., the signature on the Request for Verification of Employment submitted by the plaintiff was a forgery. Mr. Derr provided HUD with an Affidavit to this effect. (A.R. pp. 140, 150, 154).

17. After receiving all of the documentation submitted by plaintiff, it was HUD's decision that plaintiff had not met the criteria for eligibility under the Assignment Program. A final decision letter dated August 4, 1992 from HUD was sent to the plaintiff explaining the rejection of plaintiff's application. (A.R. p. 148).

18. HUD notified the mortgagee that foreclosure proceedings could be commenced. (A.R. p. 149).

19. HUD was contacted by a staff member of Community Legal Services (CLS), who requested that HUD reconsider its final decision rendered in this case. CLS claimed that the fact that Mr. Fields received unem-

ployment compensation should be considered over the "word of someone spoken to over the phone." (A.R. pp. 159–161).

20. Although there is no provision in HUD's regulations or Handbooks requiring this type of reconsideration, HUD voluntarily agreed to re-examine its decision. After a careful evaluation of the previous findings, HUD notified Community Legal Services, by letter dated May 4, 1993, that HUD was reaffirming its original negative decision. (A.R. pp. 162–163).

21. Plaintiff received all the rights to which she was entitled in the processing of her application for mortgage relief under HUD's Mortgage Assignment Program. 24 C.F.R. Section 203.650, *et seq.*

In addition to these facts, plaintiff asserts that at the same time that Field's unemployment compensation lapsed, she was unable to work as much overtime as she ordinarily could and the family's income dropped. She states her net income averaged $181.09 per week in November, 1991 and $184.38 in December. In contrast, she averaged $200.45 per week net pay for the period of January–June 1992. Ms. Rodriguez also avers that she first became aware that EZ Parks had informed HUD that Fields was terminated due to his involvement with a stolen car when she received HUD's Final Negative Decision dated August 4, 1992, leading to her request that HUD reconsider its decision.

## DISCUSSION

■ Rodriguez agrees with the defendants that this case involves a challenge to informal agency action and that the standard of review contained in Section 10(e)(2)(A) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), applies. It provides that the reviewing court shall

> hold unlawful and set aside agency action findings and conclusions found to be—
>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law

*see generally, Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The arbitrary and capricious standard is highly deferential to the agency and presumes the agency's action is valid. *Id.,* 401 U.S. at 419, 91 S.Ct. at 825. It forbids the court from substituting its own judgment for that of the agency. *Id.,* 401 U.S. at 416, 91 S.Ct. at 823. The court is bound to affirm the agency's decision if the agency presents a rational basis for substantiating its action. *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.,* 419 U.S. 281, 290, 95 S.Ct. 438, 444, 42 L.Ed.2d 447 (1974). The agency decision should only be reversed if the error is so clear as to deprive the agency's decision of a rational basis. *Ethyl Corp. v. EPA,* 541 F.2d 1, 34 (D.C.Cir.1976). In deciding whether the agency action is rational, a reviewing court must determine whether the agency considered the relevant data and whether the agency relied on factors Congress intended it to consider. *Frisby v. HUD,* 755 F.2d 1052, 1055 (3d Cir.1985).

■ The regulations governing MAP provide that HUD must first make a determination as to whether the mortgage was in default. 24 C.F.R. § 203.330. It is not disputed that the plaintiff's mortgage was in default. The criteria which must be met in order to receive benefits under MAP are found at § 203.650(a), which reads in relevant part:

> The Secretary will accept assignments of mortgages insured under this part in order to avoid foreclosure when the following conditions are met:
>> (1) The mortgagee has informed the mortgagor that it intends to foreclose the mortgage.
>> (2) At least three full monthly installments due on the mortgage are unpaid after application of any partial payments which may have been accepted but not yet applied to the mortgage account.
>> (3) The property is the mortgagor's principal place of residence....
>> (4) The mortgagor does not own other property subject to a mortgage insured or held by the Secretary....
>> (5) The mortgagor's default has been caused by circumstances beyond the mortgagor's control which render the mortgagor unable to correct the delin-

quency within a reasonable time or make full mortgage payments.

(6) There is a reasonable prospect that the mortgagor will be able to resume full mortgage payments after a period of reduced or suspended payments not exceeding 36 months and will be able to pay the mortgage in full by its maturity date extended, if necessary, by up to ten years.

The parties do not dispute that Rodriguez has satisfied ¶¶ 1, 2, 3 and 4.

Regarding ¶ 5, plaintiff avers the agency's decision was not in keeping with the law, and thus violative of Section 10(e)(2)(A) of the Administrative Procedures Act, because HUD considered Rodriguez and Fields to be the same person when it determined Rodriguez failed to satisfy ¶ 5 because the "mortgagor's default has been caused by circumstances beyond the mortgagor's control".[2] HUD based its conclusion that plaintiff was not eligible for mortgage assistance on the fact that Fields was laid off from his job for involvement with a stolen car.[3] Plaintiff argues that, as the sole mortgagor of the property, only her conduct was relevant under the regulation to determine whether the default was caused by circumstances beyond the mortgagor's control. Given the plain language of the regulation quoted above, we must agree.

Nowhere in § 203.650(a)(5) is it indicated that any person's conduct, other than the mortgagor's, is to be taken into consideration. The language of HUD's own Handbook for administering the MAP clearly provides for occasions when conduct other than the mortgagor's may be considered. For example, the Handbook refers to decreases in family income, rather than just the mortgagor's income, as well as expenses related to death or illness in the mortgagor's house-

hold. Paragraph 5, conversely, refers solely to the mortgagor.

■ HUD responds that other sections of the Handbook indicate it was proper to consider Fields' firing when applying ¶ 5. It cites ¶¶ C. 1. a. and 2–3 A., which provide respectively that HUD will process MAP applications from other persons who have a possible legal claim to the title of the property, as well as from a spouse who was not originally a party to the mortgage, for the proposition that Fields and Rodriguez may be considered jointly when applying ¶ 5. We find this assertion to be of no support. Neither of the cited sections of the Handbook have anything to do with the determination under ¶ 5 of whose actions may be considered to have caused the default.

■ Where a court reviews actions taken pursuant to agency regulations, validly promulgated regulations have the force of law and the agency is bound by its own regulations. Failure on the part of the agency to act in compliance with its own regulations is fatal to such action because it is not in accordance with the law. *Frisby*, 755 F.2d at 1055. As the United States Supreme Court has stated, where there is no claim that a regulation violated the Constitution or a statutory mandate, a court must be hesitant to substitute an alternative reading for the agency's reading unless that alternative reading is compelled by the regulation's plain language. *Gardebring v. Jenkins*, 485 U.S. 415, 430, 108 S.Ct. 1306, 1314, 99 L.Ed.2d 515 (1988). Such is the case sub judice. The plain language of the regulation limits the agency's consideration to the actions of the mortgagor, Rodriguez, in determining whether the default was caused by circumstances beyond her control.

As HUD considered improper criteria in determining that the plaintiff failed to meet

---

**2.** Since the failure to qualify for one criterion is sufficient to deny assistance under the program, HUD did not continue its analysis under § 203.-650(a)(6) to determine whether the plaintiff would have reasonable prospects of being able to pay mortgage payments in the future.

**3.** HUD's Final Negative Decision reads in part: You also indicated that your common-law husband was laid off in January 1991, however

after further review, it was determined through a conversation with his former employer (E–Z Parks) that Mr. Fields was terminated in January 1991. In light of this fact, we must conclude that the reduction in income was due to this termination and does not constitute a circumstance beyond your control to meet payment of your monthly mortgage obligation.

the requirements of § 203.650(a)(5), we shall remand this matter to the agency for further proceedings. So that this matter is reexamined expeditiously, we shall direct that the agency conclude its reconsideration within ninety days.

### ORDER

The motion of the plaintiff Rosalina Rodriguez for summary judgment is DENIED.

The motion of defendants Annette Panasiuk, Thomas W. Langston and the United States Department of Housing and Urban Development for summary judgment is DENIED.

This matter is REMANDED to the United States Department of Housing and Urban Development for further proceedings to occur within the next ninety days. Either party may thereafter reinstate this matter.

The Clerk is DIRECTED to mark this matter closed.

IT IS SO ORDERED.