29 F.3d 628
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
SIOUX VALLEY HOSPITAL, etc. Appellant,
v.
Donna E. SHALALA, etc. Appellee.
 No. 93-3741SD.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: June 13, 1994.
Filed: July 20, 1994.
 
 Before R. ARNOLD, Chief Judge, WELLFORD*, Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 This case involves a dispute between the parties regarding a complex and technical computation of the amount of reimbursement costs due plaintiff Sioux Valley Hospital ("the Hospital") under Medicare law and applicable regulations. The Hospital claims that it is entitled to approximately $130,000 in additional Medicare reimbursement[1] for the fiscal year ending April 30, 1985, through 1987, inclusive. We set out pertinent portions of the stipulated facts:
 
 
 2
 Sioux Valley Hospital, is a not-for-profit corporation providing general short term hospital care. The Provider is located in Sioux Falls, South Dakota and was certified for Medicare participation on July 1, 1966. This appeal involves three
 
 
 3
 [annual] cost reporting periods of the Provider.... This appeal involves only one remaining issue for all three of the cost reporting periods....
 
 
 4
 The Intermediary made adjustments to three elements of the indirect medical education ("IME") formula used by the Provider to compute its IME adjustment amount.... [T]he remaining issue is the number of beds to be used in the IME calculation,a § shown below:
 
 Provider Intermediary
 Computation Computation
 Number of Beds 456 486
 
 5
 The number of beds was increased by the Intermediary from 456 to 486 to reflect 30 Intensive Care Nursery Beds, which had been excluded by the Provider.
 
 
 6
 [A]t all times during those cost reporting periods, the Provider maintained 69 intensive care unit beds, 30 of which were located in the Provider's Intensive Care Nursery ("ICN"). The ICN is a separate intensive care unit from the Provider's other intensive care units, and all of the beds in the ICN are used exclusively by newborns. The Provider and the Intermediary agree that the ICN qualifies as a special care unit under the applicable Medicare regulations. As required by the Medicare program with respect to the reporting and apportionment of intensive care unit costs, none of the costs of the ICN nor any costs of the Provider's other intensive care units have been included in the routine costs reported to the Medicare program for payment purposes. In its Medicare cost reports, the Provider excluded the ICN beds from the calculation of its indirect medical education payments; the Intermediary's adjustments added the ICN beds back in to the formula.
 
 
 7
 The Provider excluded these beds on the basis of the regulation governing the calculation of the IME adjustment. 42 C.F.R. Sec. 405.477(d)(2) which has since been recodified to 42 C.F.R. Sec. 412.118(b). The Intermediary added these beds back into the IME calculation on the basis section 2405.3 of the Provider Reimbursement Manual, HCFA Pub. 15-1, which was modified by Transmittal Number 345 which had an effective date of August 25, 1988 and which provided (among other things) that special care unit beds (including neonatal intensive care units such as the ICN) are to be included in the calculation of the IME adjustment amount for the cost reporting periods at issue here.
 
 
 8
 Upon an adverse administrative decision by the fiscal intermediary under the Medicare procedures, the Hospital appealed to the Provider Reimbursement Review Board ("PRRB"). In August of 1992, PRRB reversed the fiscal intermediary's decision and ruled in favor of the Hospital based on the latter's retroactive application of a revised manual guideline which became effective August, 1988. In the final administrative action by the defendant Secretary, however, the Acting Deputy Administrator of the Health Care Financing Administration reversed the PRRB, requiring that the Hospital include neonatal intensive care beds in the computation of the indirect medical education reimbursement formula as urged by the Secretary, thereby reducing the amount of the reimbursement to the Hospital over the three year period. (The more beds included in the formula, the less the reimbursement.)
 
 
 9
 The plaintiff sued in district court claiming the additional reimbursement over the three year period and challenging the final administrative determination. The district court then granted summary judgment for the defendant Secretary without a written opinion, stating in its oral ruling:
 
 
 10
 It's the Court's view that in this administrative appeal that the standard of review for this Court is whether the administrative actions of the Defendant were arbitrary and capricious in determining that the reference to newborn beds in the IME did not include newborn intensive care beds.
 
 
 11
 The Court has considered the Briefs of the parties and the arguments of counsel and concludes that the decision of the Defendant is not arbitrary and capricious on this point.
 
 
 12
 Certainly, it seems to me that it doesn't make sense to me to treat newborn nursery beds and newborn intensive care beds for the IME reimbursement the same and I can't find, therefore, that the Defendant is arbitrary and capricious in not doing so.
 
 
 13
 The Hospital concedes that it must show that the Secretary's final decision is "not in accordance with law and is otherwise arbitrary, capricious, and an abuse of discretion" in order to prevail. See Administrative Procedure Act, 5 U.S.C. Sec. 706.
 
 
 14
 We first address PRM Sec. 2405.3G, adopted in 1988 by the Secretary, which provides, in pertinent part, that a hospital provider may not count "beds assigned to newborns which are not in intensive care areas" in calculating the reimbursement for indirect medical education costs at issue, but may include or count "neonatal intensive care unit beds." PRRB found that PRM Sec. 2405.3G was inconsistent with pertinent language in regulation 42 C.F.R. Sec. 412.118 (formerly 42 C.F.R. Sec. 405.477(d)(2)) applicable to the years at issue:
 
 
 15
 For purposes of this section, the number of beds in a hospital is determined by counting the number of available bed days during the cost reporting period, not including beds assigned to newborns, custodial care, and excluded distinct part hospital units,....
 
 
 16
 The Deputy Administrator, in reversing PRRB, made the following different interpretation of 42 C.F.R. Sec. 412.118 as it relates to this case:
 
 
 17
 Further, 42 CFR 412.118, promulgated in 1985, did not affect the treatment of newborn beds. Rather, the regulation merely changed the methodology of the count, replacing the one-day count in September with a count of available bed days throughout the year. Therefore, the 1988 PRM provision, which the Board characterized as an "arbitrary act which totally ignores the governing regulatory rule," represents, instead, an "appropriate and consistent clarification of long-standing policy" which should be followed in the instant case.
 
 
 18
 ...
 
 
 19
 As amended, the IME regulation reflects the methodology HCFA has historically used to determine the number of beds. Contrary to the Board's conclusion, this regulation does not "clearly exclude all beds assigned to newborns, regardless of whether the newborn beds are located in a routine or an intensive care unit." The reference to "newborns" in the regulation can reasonably be interpreted to exclude only newborn bassinets receiving routine care. Further, the language of the regulation permits an interpretation that neonatal intensive care beds are properly counted as ICU beds.
 
 
 20
 (footnote omitted). The district court made no determination about the application of the 1988 PRM Sec. 2405.3G but simply noted an adequate basis for the Secretary's different treatment of "newborn nursery beds and newborn intensive care beds." The issue before us is whether that different treatment of newborn beds by the Secretary, as briefly described by the district court, is arbitrary, capricious, or not in accordance with the applicable Medicare law and regulations. See Creighton Omaha Reg. Health Care Corp. v. Bowen, 822 F.2d 785, 789 (8th Cir. 1987). We affirm the Secretary's interpretation.
 
 
 21
 We first deal with the 1988 manual guideline, PRM Sec. 2405.3G, and its applicability in this case to indirect medical education Medicare reimbursement to the Hospital for the years in question. We agree, at least in part, with the PRRB decision No. 92-D53 that retroactive application of this guideline would be "an improper and arbitrary act" under the circumstances. We cannot, therefore, rely upon this ground for including intensive care beds for newborns in the formula at issue.
 
 
 22
 We look, therefore, to the pertinent language of 42 C.F.R. Sec. 412.118, as amended in September, 1985:
 
 
 23
 [T]he number of beds ... is determined by counting the number of available bed days during the cost reporting period, not including beds assigned to newborns, custodial care, and excluded distinct part hospital units....
 
 
 24
 The Hospital's counsel conceded in rebuttal argument that this language is ambiguous. If the regulation is ambiguous, then the Secretary's interpretation of that language is entitled to considerable deference from this court. Indeed, the Supreme Court has recognized "the established proposition that an agency's construction of its own regulations is entitled to substantial deference." Lyng v. Payne, 476 U.S. 926, 939 (1986). In Thomas Jefferson University v. Shalala, 62 U.S.L.W. 4601, 4604 (U.S. June 24, 1994), a similar Medicare reimbursement case recently decided, the Court noted a reviewing court's role:
 
 
 25
 We must give substantial deference to an agency's interpretation of its own regulations. Martin v. Occupational Safety and Health Review Comm'n, 499 U.S. 144, 150-51 (1991); Lyng v. Payne, 476 U.S. 926, 939 (1986); Udall v. Tallman, 380 U.S. 1, 16 (1965). Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given " 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " Ibid (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)). In other words, we must defer to the Secretary's interpretation unless an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." Gardebring v. Jenkins, 485 U.S. 415, 430 (1988). This broad deference is all the more warranted when, as here, the regulation concerns "a complex and highly technical regulatory program," in which the identification and classification of relevant "criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns." Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 697 (1991).
 
 
 26
 A principal function of the Secretary under the Medicare statutory scheme with respect to reimbursement of certain costs to participating hospitals is to determine the proper calculation of reasonable costs of medical and hospital services, both direct and indirect. The latter kind, indirect costs, involved in this case, "include such items as return on equity capital and depreciation of plant and equipment," and the Secretary "is charged with developing regulations 'establishing the methods or method to be used and the items to be included in determining [reasonable] costs.' " Humana, Inc. v. Heckler, 758 F.2d 696, 697 (D.C. Cir. 1985), cert. denied, 474 U.S. 1055 (1986).
 
 
 27
 "It is undisputed that Congress, in the [Medicare] statute, granted broad discretion to the Secretary to develop the 'reasonable cost' concept through regulations." Humana, 758 F.2d at 699. The Secretary has the same broad discretion in determining the appropriate amount of the indirect medical education reimbursement component due provider hospitals, such as Sioux Valley. We are bound, therefore, to give substantial deference to the Secretary's determination in this area of the law. We are persuaded that the statute and the regulations dealing with this part of the vast congressionally created Medicare program are ambiguous; thus we give deference[2] to the Secretary's "permissible construction" under these circumstances. Chevron, USA v. Natural Res. Def. Council, 467 U.S. 837, 843 (1984). We are not free to "substitute [our] own construction" of the regulatory issue "for a reasonable interpretation made by the administrator of an agency." Chevron, 467 U.S. at 844.
 
 
 28
 The Hospital points out in its brief that a "hospital bed" under Sec. 2510.5 of the provider reimbursement manual is defined as "an adult or pediatric bed (exclusive of a newborn bed) maintained for lodging inpatients, including beds in intensive care units ... and other special care inpatient hospital units." We deem this definition to be ambiguous and not helpful to our quest in this case. It first seems to exclude a "newborn bed" but then proceeds to include "intensive care" or "special care" beds. We do not deem it unreasonable for the Secretary to interpret this manual definition as including intensive care newborn beds in the formula in question, although one might construe it as the Hospital urges us to do in this case.[3] "A reviewing court should not reject reasonable administrative interpretation even if another interpretation may also be reasonable." Creighton Omaha, 822 F.2d at 789.[4] While provider manual provisions are not regulations, but rather "interpretive rules, not subject to the rule- making process," they provide guidance to the court in this interpretation challenge.[5] Id. at 791.
 
 
 29
 The Secretary argues that she has "a longstanding requirement of including intensive care beds in the available bed count." This may be a correct assertion of a consistent and concurrent policy followed by the Secretary, but the record before us does not clearly support that contention. We, therefore, do not base our decision upon this rationale. It may be that the space provided by the Hospital to the newborn is customarily considered by the Secretary to be a "bassinet" rather than a "bed" (or the newborn may be considered to share the mother's bed). Again, we do not base our decision upon that argument.[6] Nor are we persuaded by the Hospital's argument that PRM Sec. 2510.5A "unambiguously excludes all newborn beds" and thus there cannot be included newborn intensive care beds in the formula at issue.
 
 
 30
 In sum, we believe that both parties in this case have presented and relied upon plausible interpretations of the rules and regulations applicable to indirect medical education reimbursements for the years in question. The Secretary's construction is both permissible and reasonable, and we conclude, therefore, that we should not substitute another interpretation of the applicable rules and regulations.
 
 
 31
 We accordingly AFFIRM the decision of the district court.
 
 
 
 *
 THE HONORABLE HARRY W. WELLFORD, Senior United States Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation
 
 
 [1]
 We use the amount stated in the Hospital's reply brief
 
 
 [2]
 The Chevron decision uses the expression "considerable weight should be accorded to an executive department's construction of a statutory scheme...." 467 U.S. at 844
 
 
 [3]
 The Hospital argues, in essence, that "newborn beds in its ICN are newborn beds." It is not unreasonable, however, nor capricious, to maintain that newborn ICN beds are intensive care beds under the manual guideline definition of "bed."
 
 
 [4]
 Interestingly, Creighton Omaha refers to 42 C.F.R. Sec. 405.452(d)(10) (1978) dealing with a hospital "special care unit" which refers to "such designated units which include ... burn, coronary care, pulmonary care, trauma, and intensive care units but exclude ... recovery rooms ... or maternity labor rooms." Id. at 789
 
 
 [5]
 The Hospital argues that PRM and manual guidelines are due no deference, citing Sioux Valley Hosp. v. Bowen, 792 F.2d 715, 720 (8th Cir. 1986). That case, however, involved labor/delivery room reimbursement issues, and this court found such policies inconsistent, confusing and erratic. That case is distinguishable from the situation now before us
 
 
 [6]
 We do see some logic, however, in the Secretary's argument that hospital inpatient operating costs have some bearing upon reasonable cost reimbursement, including education costs of the hospital, and that newborn intensive care units would be much more costly than ordinary newborn beds or bassinets