803 F.2d 720
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MEDICAL REHABILITATION SERVICE, P.C., a Michigan
corporation, Plaintiff-Appellant
v.
MARGARET M. HECKLER, Secretary of Health and Human Services;
and the PROVIDER REIMBURSEMENT REVIEW BOARD,
Defendants-Appellees
 No. 85-1695.
 United States Court of Appeals, Sixth Circuit.
 Sept. 12, 1986.
 
 Before: MERRITT and MARTIN, Circuit Judges; and BERTELSMAN,* District Judge.
 PER CURIAM.
 
 
 1
 Medical Rehabilitation Services appeals the district court's grant of summary judgment for the Secretary of the Department of Health and Human Services in this Medicare Reimbursement action. Medical Rehabilitation, a proprietary outpatient physical therapy clinic, received its Medicare certification on January 15, 1977. As a Medicare provider, Medical Rehabilitation applied for compensation of $56,234 for its owner-administrator, Ali Sayed, for the 1977 fiscal year which ended at the close of November, 1977. Blue Cross Blue Shield, the financial intermediary and statutorily authorized agent of the Secretary, see 42 U.S.C. Sec. 1395, determined that Sayed deserved only $22,217 as compensation for the ten and one-half months of 1977 that Medical Rehabilitation was a Medicare provider. Medical Rehabilitation appealed the compensation determination of Blue Cross Blue Shield pursuant to 42 U.S.C. Sec. 139500(a), but no hearing was held because Blue Cross Blue Shield was in the process of developing physical therapy clinic owner compensation guidelines. All parties hoped that these guidelines would lead to an amicable resolution of the matter so that further formal proceedings would be unnecessary.
 
 
 2
 Applying its newly developed Guidelines, Blue Cross Blue Shield concluded that Sayed should receive compensation of $28,221. This compensation amount would result in a Medicare reimbursement of $19,900. Medical Rehabilitation revived its appeal and a hearing was held before the Provider Reimbursement Review Board, see 42 U.S.C. Sec. 139500(a), which is composed of five members appointed by the Secretary. Two of the five members of the Board must be representatives of Medicare providers like Medical Rehabilitation, 42 U.S.C. Sec. 139500(h).
 
 
 3
 Medical Rehabilitation claims that Blue Cross Blue Shield's compensation guidelines were inadequate because the scope of the survey used as a basis for the outpatient physical therapy clinic compensation was limited to nonprofit visiting nurse associations and home health agencies. Medical Rehabilitation claims that the functions of these agencies are not comparable to those of outpatient physical therapy clinics. In addition, Medical Rehabilitation claims that the guidelines were not properly applied to Sayed. Specifically, Blue Cross Blue Shield did not give Sayed the correct credit for factors such as education and experience.
 
 
 4
 The Provider Reimbursement Review Board determined that Blue Cross Blue Shield's calculations were a reasonable application of the Secretary's regulations. The Board's decision became the decision of the Secretary when a Deputy Administrator of the Health Care Financing Administration refused to modify the decision of the Board. 42 U.S.C. Sec. 139500(f)(1). The district court, when called upon to review the Board's action, found no merit to Medical Rehabilitation's arguments and agreed with the Board's conclusion. The court granted summary judgment for the Secretary.
 
 
 5
 On appeal, our scope of review is governed by 42 U.S.C. Sec. 139500(f), which provides that an appeal of a final decision by the Board must be pursued under the judicial review sections of the Administrative Procedure Act, 5 U.S.C. Sec. 701 et seq. The relevant parts of the Procedure Act, for the purposes of this case, state that a court may set aside an agency action that is "arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A). Agency action may also be set aside if it is unsupported by substantial evidence in cases in which an agency hearing is reviewed on the record. 5 U.S.C. Sec. 706(2)(E). We hold that the guidelines developed by Blue Cross Blue Shield and adopted by the Board are not arbitrary, capricious or an abuse of discretion and are supported by substantial evidence. The application of the guidelines to Sayed is also supported by substantial evidence.
 
 
 6
 Under the Medicare program, as established by Title XVIII of the Social Security Act, 42 U.S.C. Secs. 1395-95rr, outpatient physical therapy providers such as Medical Rehabilitation are to be reimbursed for the "reasonable cost" of providing the services. 42 U.S.C. Sec. 1395f(b); 42 U.S.C. Sec. 1395x(p); 42 U.S.C. Sec. 1395x(v)(1)(A). Because the owner, among all other provider employees, is uniquely and unilaterally privileged to establish his own salary level, Medicare regulations and Program instructions in the form of a Provider Reimbursement Manual have been developed to ensure the reasonableness of such compensation. With regard to an owner-administrator's compensation, 42 C.F.R. Sec. 405.426, the regulation adopted by the Secretary, provides the following:
 
 
 7
 (a) Principle. A reasonable allowance of compensation for services of owners is an allowable cost: Provided, The services are actually performed in a necessary function.
 
 
 8
 (b) Definitions-(1) Compensation.
 
 
 9
 ----
 
 
 10
 (2) Reasonableness. Reasonableness requires that the compensation allowance:
 
 
 11
 (i) Be such an amount as would ordinarily be paid for comparable services by comparable institutions.
 
 
 12
 (ii) Depend upon the facts and circumstances of each case.
 
 
 13
 Blue Cross Blue Shield, in determining outpatient physical therapy compensation, noted that a comparative evaluation of the reasonableness of outpatient physical therapy owner compensation was hindered by the proprietary nature of all existing outpatient physical therapy clinics. Thus, there were no non-owners with which to compare outpatient physical therapy clinic owners. Also, there were few clinics of this type in Michigan. According to a Blue Cross Blue Shield survey, outpatient physical therapy clinic administrators had higher salaries than administrators of small hospitals, skilled nursing facilities, visiting nursing associations and home health agencies. Hospital administrators supervised many more employees and functioned within a more complex and costly equipment complex, yet earned less money.
 
 
 14
 For these reasons, Blue Cross Blue Shield concluded that administrator compensation data from visiting nurse associations and home health agencies should be considered in determining compensation for outpatient physical therapy clinic owner-administrators. This stance was consistent with 42 C.F.R. Sec. 405.426(b)(3)(i), which stated that owner services that are reimbursable are those "such that had the owner not rendered the services, the institution would have had to employ another person to perform the services." Since that other person would be an administrator, Blue Cross Blue Shield acted logically in considering administrator compensation in other types of agencies.
 
 
 15
 Blue Cross Blue Shield specifically chose compensation of administrators of visiting nurse associations and home health agencies because the operational characteristics of these organizations are fundamentally identical to the operational characteristics of outpatient physical therapy clinics. All three types of organizations operate out of a central office and are highly labor intensive. They each employ roughly the same number of employees with basically the same range of professional status. Administrative details such as billing, cost reporting and accounting are virtually identical. An additional reason for choosing visiting nurse associations and home health agencies as a basis for setting outpatient physical therapy owner-administrator compensation was that the organizations are by law non-profit so administrators have a less direct influence over their salaries than outpatient physical therapy owner-administrators. Blue Cross Blue Shield found these institutions "comparable" and, as directed by the regulations, used the administrative compensation for these organizations as a guide to "reasonableness" in accordance with 42 C.F.R. Sec. 405,426(b)(2)(i). Blue Cross Blue Shield set the compensation range at $14,700 to $43,450.
 
 
 16
 Having developed a range of compensation, Blue Cross Blue Shield created a point system to determine the compensation an individual owner-administrator should receive. Points were allotted for education level, experience level, the volume of service provided, job duties, and the geographical location of the provider. Through this system, Blue Cross Blue Shield followed the requirement of 42 C.F.R. Sec. 405.426(b)(2)(ii) that the facts and circumstances of each situation be considered.
 
 
 17
 Because we are analyzing Blue Cross Blue Shield's interpretation of the Medicare regulations, the applicable standard is arbitrariness, capriciousness, abuse of discretion or otherwise not in accordance with the law. Bedford County General Hospital v. Heckler, 757 F.2d 87, 89 (6th Cir. 1985). In analyzing whether the guidelines developed by Blue Cross Blue Shield, an agent of the Secretary, and approved by Provider Reimbursement Review Board are arbitrary, capricious or otherwise an abuse of discretion, it must be recognized that an administrative agency's interpretation of its own regulation must be given great deference on judicial review unless it is inconsistent with the regulation, especially in areas such as Medicare reimbursements. Bedford, 757 F.2d at 89; University of Cincinnati v. Heckler, 733 F.2d 1171, 1173-74 (6th Cir. 1984).
 
 
 18
 In light of the reasoning and evidence discussed above, we conclude that the agency did not act arbitrarily, capriciously or otherwise abuse its discretion in developing the guidelines and point system. In addition, substantial evidence supports that interpretation.
 
 
 19
 When analyzing the correctness of the application of the Blue Cross Blue Shield scheme to Medical Rehabilitation, we must determine whether substantial evidence supports the result. We conclude that substantial evidence does support Blue Cross Blue Shield's determination of the final amount of compensation Sayed deserved under the scheme.
 
 
 20
 While the record at the district court level is sparse, we find no error in the conclusion it reached. We affirm.
 
 
 
 *
 The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation