**HIGH COUNTRY HOME HEALTH, INC., Plaintiff,**

v.

**Donna E. SHALALA, Secretary of the United States Department of Health and Human Services; Nancy–Ann Min Deparle, Administrator of the Health Care Financing Administration, Blue Cross and Blue Shield Association and Wellmark, Inc., a/k/a Blue Cross and Blue Shield of Iowa, Defendants.**

No. 98–CV–184–J.

United States District Court,
D. Wyoming.

March 25, 1999.

See also 84 F.Supp.2d 1241.

R. Douglas Dumbrill, Lubneau, Hand & Bailey, Gillette, WY, Charles F. MacKelvie, MacKelvie & Associates, Chicago, IL, for Plaintiff.

Thomas D. Roberts, U.S. Attorney's Office, Cheyenne, WY, for Defendants.

## ORDER ON DISPOSITIVE MOTIONS

ALAN B. JOHNSON, Chief Judge.

The Plaintiff's "Motion for An Order to Declare Unlawful and Set Aside Secretary's Decision of March 18, 1998" and the "Defendant Secretary's Motion to Affirm" came before the Court for hearing February 24, 1999. Appearing for plaintiff were Charles MacKelvie of Chicago, Illinois and R. Douglas Dumbrill of Gillette, Wyoming; appearing for the defendant was Thomas Roberts, Assistant United States Attorney. The Court, after hearing arguments of counsel, and after having reviewed the pleadings and administrative record, and the applicable law, FINDS and ORDERS as follows:

### Background

This is an appeal of the May 22, 1998 Health Care Financing Administration ("HCFA") Administrator's decision denying the plaintiff-provider compensation as an administrator/owner of a home health agency (HHA) health care provider, reversing the Provider Reimbursement Review Board (PRRB) March 18, 1998 unanimous decision holding that the proposed reimbursement adjustment was improper. The Secretary seeks affirmance of the HCFA Administrator's reversal of the PRRB decision; the plaintiff seeks to have it set aside.

The issue is whether the intermediary of the Secretary properly disallowed a portion of the administrator/owner's compensation. Plaintiff-provider, High Country Home Health, Inc., is a home health agency owned and administrated by a husband and wife team, Reed and Marilyn Pedrick, in Laramie, Wyoming. The owner, Reed Pedrick, provides physical therapy services in an independent clinic and also provides administrative services for the provider, High Country Health, for the fiscal year at issue in this case, 1993. The field intermediary, Wellmark–Blue Cross Blue Shield of Iowa, audited the provider's cost report for fiscal year ending June 1993. A significant portion of owner-administrator's claimed compensation for that fiscal year was disallowed. Pedrick claimed compensation in the amount of $91,498, which was reduced by the intermediary in the amount of $58,040 to $33,458, after finding that the amount claimed by the owner-administrator for High Country was unreasonable compensation for the owner's dual services. The effect of the finding is that the Provider was overpaid and reimbursement to the program would be required.

A hearing was held before the PRRB, and the intermediary's adjustment to the owner-administrator's compensation was reversed as improper. The PRRB's decision was reversed by the Secretary (acting through the HCFA Administrator) and the Secretary determined the adjustment was appropriate.

The intermediary had disallowed the claimed compensation on the basis that the amount claimed was unreasonable and substantially out of line with comparable providers. The Provider asserts the en-

tire amount of the claim ($91,000+) is the actual reasonable cost of providing Medicare services to beneficiaries which is not substantially out of line with compensation paid by comparable providers in the same geographical region. Pedrick claims he worked 70 hour weeks and should be compensated for his physical therapy visits and the administrative amount requested in entirety. The intermediary determined that of 3,120 hours worked, the owner spent 1,989 hours on physical therapy visits, leaving 1,131 hours of his total time for administrative purposes. The intermediary determined that the 1,131 hours comprised about 35% of the total time spent working by the owner administrator, and thus, determined that only approximately 35% of the total amount claimed should be paid as reasonable compensation for the owner's administrative services.

High Country, the Provider, argues that hours actually worked by the owner-administrator were greater, as shown by time records kept by the Provider. The Provider argues that he should be entitled to, at the very minimum, the percentage represented by 1,131/2,080 [the number of hours generally used to determine full-time employment], for a greater percentage (approximately 54%) of the amount claimed. However, the Provider further argues that the compensation claimed, in entirety, is reasonable compensation, and that the intermediary's use of a 1979 Michigan survey in determining comparable compensation for this Provider is invalid and yields incorrect results. The Provider argues that intermediary did not follow administrative regulations and policy in finding that the Michigan survey set out valid, reasonable comparisons of compensation paid to such providers. The Provider asserts that the survey is too old, is not a survey of providers in the High Country universe as Michigan is too remote geographically, the survey does not compare "apples to apples" because it was prepared for OPT's (outpatient physical therapists) rather than home health agencies, and the survey is inappropriately adjusted to account for inflation. There are two other surveys that were referred to in the reasonable compensation determination, which are similarly criticized by the Provider as inaccurate, an incomplete universe of samples, using inappropriate statistical techniques and invalid geographically.

The Provider argues that under Medicare laws, regulations and instructions, it is entitled to reimbursement for actual reasonable costs in providing services to Medicare beneficiaries unless the governmental agency can demonstrate that those costs are substantially out of line. In determining reasonableness of claimed owner-administrator compensation, comparisons are to be made to comparable individuals and institutions, and the comparison applies to geography, type of services, size, type of personnel, etc. The Provider argues the claimed compensation for fiscal year 1993 was reasonable and well within the range provided as reasonable compensation for comparable services in comparable institutions. The Provider seeks compensation of the entire amount claimed as compensation for full-time services. Provider also argues that necessary non-owner data can be obtained in this case that are of greater validity, citing to a Denver survey as an example. The Provider argues he should receive fair payment under the Medicare regulations for services actually provided and that the intermediary failed to carry the burden of proving that his costs are substantially out of line in order to justify its denial of reimbursement for actual reasonable costs in providing services to Medicare beneficiaries.

In opposition, the Secretary argues that it acted appropriately in using the Michigan survey and in reducing the amount of compensation to the Provider, It argues that administrative services were furnished by the owner on a less than full-time basis and that it is also entitled to use "other appropriate means" in determining owner-administrator's salaries. The concern is that as an owner-administrator setting his/her own salary, the salary will be

out of line with comparable HHA administrators and will not truly reflect the reasonable value of comparable services that have been provided. Reasonableness of compensation for owner-administrators depends upon the facts and circumstances of each case. The Secretary argues High Country failed to show Pedrick actually worked full-time as an owner-administrator and was only able to document working a 60 hour week. Where services are furnished on a less than full-time basis, allowable compensation must reflect an amount proportionate to a full-time basis, citing 42 C.F.R. § 413.102(c)(2).

Additionally, the owner-administrator claimed a salary amount of $70,001, plus add-on compensation representing a bonus from non-reimbursable entities (physical therapy and non-Medicare entities) in the amount of $21,497, which the Secretary claims should be deemed an unallowable distribution of profits. The Secretary asserts that the propriety of the method used by the fiscal intermediary is to be judged in light "of the reasonable cost principle, i.e. the method must be designed to prevent reimbursement of a profit margin through payment of an amount greater than the amount comparable providers would pay, as a result of arms-length bargaining, to non-owner employees for similar services. Payments which represent profit, or a return on capital equity, are not allowable costs to the Medicare program." The add-on compensation sought was based on High Country's profit margins, does not reflect that administrative services were actually provided, and does not reflect the fair market value for the services or the amount that would be paid for comparable services by comparable institutions.

In response, the Provider argues, in addition to the arguments above, that the intermediary's arithmetic relating to his full-time employment as an administrator is flawed, ignores time records, is based on incorrect assumptions about the amount of time devoted to administrative work and to physical therapy visits. He contends that he held two full-time jobs—one as a physical therapist, one as a full-time owner-administrator—both of which should be fully compensated. He argues there is ample proof that the claimed administrative compensation is reasonable and that the determination otherwise is arbitrary and without support. Provider also argues that the intermediary violated the single audit rule when it audited fiscal years 1993 and 1994 at the same time.

### Standard of Review

The scope of review is governed by 42 U.S.C. § 1395oo(f), which provides that an appeal of a final decision by the Board must be pursued under the judicial review sections of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. Under the Act, a court may set aside an agency action that is arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). Agency action may also be set aside if it is unsupported by substantial evidence in cases in which an agency hearing is reviewed on the record. 5 U.S.C. § 706(2)(E). *See Thomas Jefferson University v. Shalala,* 512 U.S. 504, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994); *Medical Rehabilitation Service, P.C. v. Heckler,* 803 F.2d 720 (Table), Unpublished Disposition, Text at 1986 WL 17724 (6th Cir.1986).

A reviewing court must defer to the Secretary's interpretations of the agency's interpretations of its own regulations unless it is plainly erroneous or inconsistent with the regulation. *Thomas Jefferson University v. Shalala,* 114 S.Ct. at 2386. The reviewing court should defer to the Secretary's interpretation unless an " 'alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.' " *Id.,* quoting *Gardebring v. Jenkins,* 485 U.S. 415, 430, 108 S.Ct. 1306, 1314, 99 L.Ed.2d 515 (1988). "This broad deference is all the more warranted when, as here, the regulation concerns 'a complex and highly technical regulatory program,' in which the identification and classification of relevant 'criteria necessarily re-

quire significant expertise and entail the exercise of judgment grounded in policy concerns.'" *Id.*, quoting *Pauley v. Beth-Energy Mines, Inc.*, 501 U.S. 680, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991).

## Discussion

The dispute in this case arises in a context similar to that described in the following excerpt:

The Medicare program was established as an amendment to the Social security Act by the Medicare Act, which is codified at 42 U.S.C. § 1395, et seq. Under the Medicare program, certified providers render medical services to Medicare beneficiaries. Medicare then reimburses the providers for the reasonable costs of providing such services. 42 U.S.C. § 1395g, § 1395x(u) and § 1395f(b).

The Medicare reimbursement program is administered by private companies which act as fiscal intermediaries for the Department of Health and Human Services ... [.] 42 U.S.C. § 1395h. In this case, the intermediary was Blue Cross of Blue Shield of Louisiana....

To meet a provider's cash flow needs, the law requires the intermediary to make interim payments (at least monthly) to the provider on an estimated cost basis. At the end of the provider's fiscal year, the provider files a cost report with the intermediary describing all actual costs incurred. The cost reports are subject to audit by the intermediary, and if the intermediary's audit indicates that the Medicare program has overpaid the provider, the intermediary issues Notice of Program Reimbursement.

In the case at bar, Blue Cross audited Ruston's cost reports for 1985, 1986 and 1987 and determined that Medicare had overpaid Ruston during all three years. Each year Ruston appealed Blue Cross' determinations to the Board, and the three appeals were consolidated for one hearing before the Board. Prior to the hearing date, Blue Cross revised its calculations, and after the hearing, the Board modified Blue Cross' calculations in three respects which increased all amounts that Blue Cross had allowed to Ruston. Then the Administrator of the Health Care Financing Administration ("HCFA"), on her own motion, declined to review the Board's decision, so the decision of the Board became the final decision of the Secretary of the Department of Health and Human Services (hereinafter "the Secretary").

*Ruston Physical Therapy Rehabilitation Agency, Inc. v. Sullivan, Unreported decision*, Text at 1992 WL 370790, *1 (W.D.La. 1992).

All of the parties in this case acknowledge that providers of Medicare services are to be reimbursed for the reasonable cost of providing the services. 42 U.S.C. § 1395x(v). Applicable regulatory provisions are set forth below. Review of those provisions begins in this case with 42 C.F.R. § 413.09.

§ 413.09. Cost related to patient care.

(a) *Principle.* All payments to providers of services must be based on reasonable cost of services covered under Medicare and related to the care of beneficiaries. Reasonable cost includes all necessary and proper costs incurred in furnishing the services, subject to principles relating to specific items of revenue and cost. However, for cost reporting periods beginning after December 31, 1973, payments to providers of services are based on the lesser of the reasonable cost of services covered under Medicine and furnished to program beneficiaries or the customary charges to the general public for such services, as provided for in § 413.13.

(b) *Definitions.*—(1) *Reasonable Cost.* Reasonable cost of any services must be determined in accordance with regulations establishing the method or methods to be used, and the items to be included. The regulations in this part take into account both direct and indirect costs of providers of services. The objective is that under the methods of determining costs, the costs with respect to individuals covered by the program

will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by the program. These regulations also provide for the making of suitable retroactive adjustments after the provider has submitted fiscal and statistical reports. The retroactive adjustment will represent the difference between the amount received by the provider during the year for covered services, from both Medicare and the beneficiaries and the amount determined in accordance with an accepted method of cost apportionment to be the actual cost of services furnished to beneficiaries during the year.

\*     \*     \*     \*     \*     \*

42 C.F.R. § 413.102, entitled Compensation of owners, provides:

(a) *Principle.* A reasonable allowance of compensation for services of owners is an allowable cost, provided the services are actually performed in a necessary function.

(b) *Definitions.* *(1) Compensation.* Compensation means the total benefit received by the owner for the services he renders to the institution. It includes:

(i) Salary amounts paid for managerial, administrative, professional, and other services;

(ii) Amounts paid by the institution for the personal benefit of the proprietor;

(iii) The cost of assets and services which the proprietor receives from the institution;   .

(iv) Deferred compensation.

(2) *Reasonableness.* Reasonableness requires that the compensation allowance:

(i) Be such an amount as would ordinarily be paid for comparable services by comparable institutions;

(ii) Depend upon the facts and circumstances of each case.

(3) *Necessary.* Necessary requires that the function:

(i) Be such that had the owner not rendered the services, the institution would have had to employ another person to perform the services.

(ii) Be pertinent to the operation and sound conduct of the institution.

(c) *Application.* (1) Owners of provider organizations often render services as managers, administrators, or in other capacities. In such cases, it is equitable that reasonable compensation for the services rendered be an allowable cost. To do otherwise would disadvantage such owners in comparison with corporate providers or providers employing persons to perform similar services.

(2) Ordinarily, compensation paid to proprietors is a distribution of profits. However, where a proprietor renders necessary services for the institution, the institution is in effect employing his services, and a reasonable compensation for these services is an allowable cost. In corporate providers, the salaries of owners who are also employees are subject to the same requirements of reasonableness. Where the services are rendered on less than a full-time basis, the allowable compensation should reflect an amount proportionate to a full-time basis. Reasonableness of compensation may be determined by reference to, or in comparison with, compensation paid for comparable services and responsibilities in comparable institutions; or it may be determined by other appropriate means.

The Medicare Provider Reimbursement Manual (PRM) again sets out that an owner is entitled to a reasonable allowance of compensation for services as an allowable cost.[1] The pertinent definitions are set

---

1. The PRM is a product of informal rule making that fleshes out details of the governing agency policies. The interpretative rules in the PRM do not have the force and effect of law. *See Shalala v. Guernsey Memorial Hosp.*, 514 U.S. 87, 115 S.Ct. 1232, 1237, 131 L.Ed.2d 106 (1995); *Universal Health Services of Nevada, Inc. v. Shalala*, 1996 WL 233037, *2 (D.Nev.1996).

out in section 902, and includes a definition of reasonableness in 902.3:

> Reasonableness requires that the compensation allowance be such an amount as would ordinarily be paid for comparable services by comparable institutions depending upon the facts and circumstances of each case. Reasonable compensation is limited to the fair market value of services rendered by the owner in connection with patient care. Fair market value is the value determined by the supply and demand factors of the open market.

Criteria for determining reasonable compensation are set out in section 904.

> In general, the determination as to the reasonableness of a person's compensation is made by comparing it with the compensation paid to other individuals in similar circumstances. To obtain uniformity in application of the principle, the intermediary (1) identifies compensation paid to individuals other than owners by comparable institutions in the same geographical area, (2) furnishes this data to the Bureau of Health Insurance regional office where it is consolidated with data obtained by other intermediaries to produce ranges for reasonable compensation to be used in the same area, and (2) applies a set of criteria based on the qualifications and responsibilities of the owner to determine his placement within the range.

> In establishing the ranges, abnormally low amounts of compensation sometimes received by employees of religiously sponsored providers may be ignored since circumstances led to the establishment of their rate of pay which are not applicable to other persons. Although intermediaries are to be guided by the established ranges in evaluating the reasonableness of an owner's compensation, there may be special circumstances where an intermediary, on the basis of its judgment, allows an amount that is outside the established range. This might occur where the provider has certain characteristics or the owner has special qualifications and experience which would make a comparison with other institutions and individuals unrealistic.

The next section of the PRM, 904.1, lists factors to be considered in determining comparability of institutions, which include the size of the institution, which is to be measured by the number of visits for home health agencies, classification of institutions, the number and types of personnel employed, and geographical location, giving consideration to the area of the United States in which the institution is located and whether it is an urban, suburban, or rural setting, and differences in prevailing living and wage costs. Section 904.2 then goes on to address factors to be applied in evaluating compensation within range for comparable institutions, including the qualifications of the owner, the number and types of professional and other personnel supervised by the owner, the duties and responsibilities of the owner and actual services rendered, and whether the owner performs services for any other institutions or is engaged in any other occupation.

> C. The duties and responsibilities of the owner and the actual services rendered.

> 1. Information as to the owner's actual duties, responsibilities, hours, and days regularly worked, etc., should be obtained. Compensation for "full-time" service requires that at least 40 hours per week be devoted to the duties of the position for which compensation is requested. Owners devoting less than 40 hours per week to the position will be compensated on a proportionate basis, with 40 hours per week considered to be the full-time basis for such proportionate compensation.

> 2. The fact that an owner may have potential supervisory and managerial authority and responsibility for an institution is not as important as the manner in which this authority and responsibility is actually exercised. For example, another individual, perhaps with the designa-

tion of assistant administrator, might perform most day-to-day managerial and supervisory functions in an institution. In such case, the right of the owner-administrator to overrule decisions does not constitute a basis for recognition of compensation comparable to administrators in other similar institutions.

D. Whether the owner performs services for any other institutions or is engaged in any other occupation.

1. Presumably, where an owner performs services for several institutions, he spends less than full-time (i.e., at least 40 hours a week) with each institution. In such cases, allowable compensation shall reflect an amount proportionate to a full-time basis.

2. If an owner is engaged in another activity, such as an owner-administrator also having a private medical practice, he ordinarily could not render full-time services as administrator of the institution.

In this case, the intermediary determined, primarily relying upon the Michigan survey included in the record, that the appropriate full-time compensation for an owner-administrator such as the Provider in this case would be $92,299 per annum. The intermediary then adjusted the owner-administrator's compensation downward to reflect that Pedrick's duties as owner-administrator of High Country Health were not full-time. In doing so, the intermediary determined that Pedrick worked a total of 60 hours per week, or 3,120 per year, performed 1,989 hours of physical therapy visits, with the balance of time devoted to his administrative duties for the HHA. Thus, the owner-administrator was entitled to receive compensation for the percentage yielded by the ratio of 1,131/3,120 or 36.25% of the full-time salary of $92,299: $33,458. The Secretary asserts that this determination resulted in the fiscal intermediary apportioning on the Medicare cost report an allowable administrative compensation of $33,458 for fiscal year 1993. This amount was deducted from the salary claimed by the owner-administrator ($70,-

001 plus the $21,497 add-on salary adjustment) for a resulting adjustment of $36,543.

The intermediary also disallowed the add-on to the owner-administrator's salary claimed by the Provider in the amount of $21,497, contending it represented a bonus from non-reimbursable entities, such as physical therapy and non-Medicare entities. The HCFA Administrator found that the record was unclear as to what the $21,497 represented and in the absence of documentation from the Provider, deemed it an unallowable distribution of profits. The total compensation requested by the owner-administrator was reduced accordingly.

The Provider has argued that it had no way of anticipating that the compensation for the year at issue was unreasonable since identical compensation had not been adjusted for the prior fiscal year, 1992. The same "add-on" compensation was allowed by the intermediary for the prior fiscal year 1992. He contends that the amount that should have been allowed to Pedrick, owner-administrator of High Country Health, as overall total administrative compensation, is $91,498. He contends that the administrator improperly determined the number of hours spent performing administrative duties.

Pedrick testified that he worked approximately 70 hours per week. He worked five days a week from about 8:00 a.m. until 8:00 or 9:00 at night and also put in additional hours on Saturday and Sunday. Contemporaneous time records were kept reflecting hours spent. Record at 113–116, 130–131. The intermediary requested the day-timer records after the audit, which were provided. Record at 125. The time study discussed, and included as an exhibit in the record, was constructed from information in the Provider's contemporaneous day-timer records and time logs.

The time study relied upon by both the Provider and intermediary in their respective time computations, Exhibit I–10–3—I–

10–9, Record at 990–996, includes the following notation:

> NOTE: This is a sample time study prepared by the provider in 1995. The provider did not maintain time studies in FY '93. This sample time study was created using PT home visit logs and clinic logs. We, the intermediary, are using the sample time study only as a means to establish total hours worked. We do not accept the split between adm. time and PT time as reflected in this sample time study.

The intermediary calculated that the owner-administrator worked 60 hours per week. The intermediary did not include in its computations time worked on Saturdays or Sundays, which reduced the actual time worked by approximately 11.5 hours. No satisfactory explanation is in the record as to why these days were arbitrarily excluded from the computations of time which was actually spent working. The exhibit demonstrates that the owner-administrator worked approximately 71.5 hours per week. He should be compensated for that actual amount of time and the intermediary improperly failed to include the Saturday and Sunday time in its analysis of the time studies. Extrapolating from these figures, the owner-administrator worked 3,718 hours per year (71.5 × 52 weeks) for the fiscal year at issue.

The fiscal intermediary, and now the Secretary, argues that the owner-administrator's claimed compensation was in excess of reasonable cost. This determination was based upon the intermediary's finding that Pedrick was only a part-time administrator. Additionally, it utilized the Michigan survey (as well as other studies including the Zabka Home Care Salary and Benefits Report, the Missouri Alliance for Home Care—1992 MAHC Home Care Salary Survey) to determine reasonable full-time compensation for administrative services performed by an owner-administrator of a home health agency.

■ Provider has argued that the intermediary inappropriately determined that he committed 1989 hours to the physical therapy aspects of his business. The testimony of the Provider indicated that each physical therapy visit took between three quarters of one hour to one hour. Thus, he suggests that if one were to instead assume that a physical therapy visit was only 45 minutes rather than one hour, then only 1,492 of his hours, not 1,989, were devoted to physical therapy visits. Because there were no time studies, the intermediary assumed one hour per physical therapy visit. Record at 230.

The Court finds that the record before the Court does not indicate that the intermediary's attribution of one hour per physical therapy visit is arbitrary, capricious or clearly contrary to law. Applicable regulation provides that if time records are unavailable or are found to be inaccurate, each HHA visit is considered the equivalent of one hour of service. 42 C.F.R. § 413.106(c)(4)(ii).

■ With respect to the intermediary's determination that the $21,497 add-on was to be disallowed, the Court finds that determination is not arbitrary, capricious, or contrary to law. Mark Baird, the Provider's Medicare consultant, testified when being questioned by Mr. Talbert, attorney for the intermediary, as follows:

Q. Okay. I'm winding down here, but I wanna go—I need to go back just to have the cost report in front of us as a—reference. I've—the—the 21—I wanna go back and close the loop on—on the—on the $21,000 add-on.

A. Sure.

Q. And I'm just—have Worksheet A in front of me although the—may not need that to answer the question.

A. Sure.

Q. The difference between the cost and the revenue for these two activities was identified, and 90 percent was taken as compensation and added to the administrative and general line?

A. The—not 90 percent of it; it was what—per the calculation that was used in the prior year by the auditors,

we determined that 21,500 was additional compensation that could be allowed from that 90—90 percent.

Q. I mean was that just a—kind of plug factor to get back to the compensation that was allowed in the previous year?

A. Yes, that was. It was a plug factor, but the 90 percent is a true factor which goes in as salary and is considered to be administrative salary of Reed and Marilyn.

Q. The—so, the administrative salary is calculated as 90 percent of the profit margin on these two lines of business?

A. Yes.

Record at 198–200.

Payments which represent profit or a return on capital equity are not allowable costs. 42 C.F.R. § 413.102(c)(2); PRM 902.2[2] Record at 870.

The record does not show that Reed Pedrick was a full-time owner-administrator. The record does show that he requested compensation for administrative services in the total amount of $91,498. Of the total amount requested, it is clear from the record that $21,497 is an amount paid to Pedrick based upon the profitability of the company. This amount was properly disallowed by the intermediary. This leaves $70,000 as salary requested by the Provider for administrative work performed by Pedrick.

The record supports a finding that Pedrick worked 3,718 hours per year (71.5 × 52) and that 1,989 hours of that time are attributable to time spent in physical therapy visits. Pedrick is not entitled to compensation for this physical therapy time as administrative time. Thus, of the 3,718 total hours, the record supports a finding that 1,729 hours were dedicated to performing administrative duties.

The applicable regulations provide, at 42 C.F.R. § 413.101(c)(2):

(2) Ordinarily, compensation paid to proprietors is a distribution of profits. However, if a proprietor furnishes necessary services for the institution, the institution is in effect employing his services, and a reasonable compensation for these services is an allowable cost. In corporate providers, the salaries of owners who are also employees are subject to the same requirements of reasonableness. If the services are furnished on less than a full-time basis, the allowable compensation should reflect an amount proportionate to a full-time basis. Reasonableness of compensation may be determined by reference to, or n comparison with compensation paid for comparable services and responsibilities in comparable institutions; or it may be determined by other appropriate means.

There is no disagreement among the parties that full-time employment constitutes a minimum of 2,080 hours worked per year. *See also* PRM 904.2 ("Compensation for 'full-time' service requires that at least 40 hours per week be devoted to

**2.** 902.2 *Compensation—Corporations.—*

For purposes of determining whether the total compensation paid to an owner is reasonable, compensation as defined herein means remuneration paid to an owner regardless of the form in which it is paid. (See §§ 906 and 906.1.) Compensation may be included in allowable provider cost only to the extent that it represents reasonable remuneration for managerial, administrative, professional, and other services related to the operation of the facility and rendered in connection with patient care. Services rendered in connection with patient care include both direct and indirect activities in the provision and supervision of patient care, such as administration,

management, and supervision of the overall institution. Services which are not related to either direct or indirect patient care, e.g., those primarily for the purpose of managing or improving the owner's financial investment, are not recognized as an allowable cost. Compensation of a physician-owner of a facility is subject to an allocation between professional and provider components. (see § 2108).

Payments found to represent a return on equity capital are not compensation and are in no event allowable as an item of reimbursable cost. Nor are such payments considered as compensation for purposes of determining the reasonable level of reimbursement of the owner.

the duties of the position for which compensation is requested. Owners devoting less than 40 hours per week to the position will be compensated on a proportionate basis, with 40 hours per week considered to be the full-time basis for such proportionate compensation.") In this case, therefore, it is apparent that the intermediary's calculation of time spent in administrative tasks (1,131/3,121) is not correct. As noted above, the Provider spent 1,729 hours on administrative duties. The intermediary should have determined owner-administrator compensation on a less than full-time basis by using 40 hours per week (or 2,080 per year) as the amount of time required for full-time service. In this case, the ratio should have been 1,729/2,080—83.125% of a full-time administrative position.

In this case, after disallowing the $21,497 add-on compensation discussed above, the amount requested by Pedrick, the owner-administrator, for administrative services was $70,001. Under the analysis employed by the intermediary using the Michigan survey, the top compensation that could be awarded a full-time administrator was $92,299. Accepting that number for purposes of the following discussion only, an owner-administrator devoting only 83.125% of full-time employment to administrative duties would be entitled to receive maximum compensation of $76,723.54 (83.125% of $92,299). Because Pedrick's $70,001 administrative compensation request is well below that amount, the compensation sought by the owner-administrator (less the $21,397 add-on representing a bonus based on the company's profits) will be allowed as requested. For that reason, the Court need not address the parties' remaining arguments, including those regarding the intermediary's use of the Michigan survey as a valid means of establishing owner-administrator compensation in this case. The Court does note, however, that the Secretary did not present any evidence which suggests the use of a 1979 Michigan survey, updated to account for inflation, is somehow more valid than a similar 1974 Denver survey similarly updated. The intermediary and Secretary should not consider this Court's disposition of the instant case as an imprimatur of the continuing use of the Michigan survey to determine appropriate compensation for providers and institutions in areas that are not comparable and are geographically remote to the institutions studied in the Michigan survey.

The Court finds that the Provider's compensation in this case (after disallowing the $21,497 add-on bonus) is not substantially out of line with costs incurred by comparable institutions. The full amount of requested compensation, so adjusted, is reasonable. The intermediary's decision, supported by the Secretary in the instant case, must be modified to reflect that owner-administrator full-time compensation must be determined on the basis of a 40 hour work week or 2,080 per year. Time worked on Saturdays and Sundays may not be arbitrarily excluded when determining the amount of time worked by an owner-administrator. The $70,001 requested by the Provider in this case is reasonable compensation and the Provider is entitled to reimbursement of those actual reasonable costs in providing services to Medicare beneficiaries. The government has not demonstrated that those costs are substantially out of line.

Accordingly, it is therefore

**ORDERED** that the "Plaintiff's Motion for an Order to Declare Unlawful and Set Aside Secretary's Decision of March 18, 1998" [sic] shall be **GRANTED**, to the extent that plaintiff seeks a finding that the Provider's compensation in the amount of $70,001 (excluding the $21,497 add-on bonus based on profits) is reasonable compensation. It is further

**ORDERED** that the "Defendant Secretary's Motion to Affirm Final Agency Decision" shall be, and is, **DENIED**, except that the defendant Secretary's determination that the requested $21,497 add-on bonus based on profits is not compensation

allowable as an item of reimbursable cost shall be **AFFIRMED**.